J. W. B. Edwards, plaintiff in error, vs. Ellison Banksmith and James H. Mulford, defendants in error.

| 35 | 213 |
|----|-----|
| 103 | 454 |
| 35 | 213 |
| 106 | 38 |
| 35 | 213 |
| 111 | 395 |

[1.] The continuance or dissolution of an injunction, after the coming in of the answer, depends upon the sound discretion of the Court, according to the nature and circumstances of the case ; and unless such discretion be abused, this Court will not control the Court below in its exercise.

[2.] *Lis pendens* is a general notice of an equity to all the world.

Motion to Dissolve Injunction.    Decided by Judge Irwin. At Chambers.    October, 1866.

This was a bill filed by the plaintiff in error against the defendants in error, to set aside as fraudulent, a conveyance of certain lands lying in Cobb county, made by the former to Banksmith, one of the latter, who purchased for and on account of Mulford, his co-defendant.    The fraud alleged was, that the defendants knew the land contained a valuable gold mine, and the complainant had no such knowledge, and that Banksmith, on being asked by complainant, during the negotiations, what the lands were wanted for, and whether they did not have gold upon them, replied that they were wanted for farming purposes, etc., and that if they contained gold he did not know it.    The bill charged that Banksmith resided beyond the limits of this State, and that both defendants, (so far as complainant knew) were insolvent and unable to respond in damages.    It prayed for an injunction

14

to restrain the defendants from selling the lands and from working them as a mine; and the injunction was granted.

The answers denied that any gold had, so far as the defendants knew, been found on the lands either before or after the purchase.   Mulford admitted, however, that the lands lay in or near what was considered the gold range or formation, between Lumpkin county, Ga., and Randolph county, Ala., and that on that account he caused the purchase to be made, acting altogether on a calculation of chances.

On the coming in of the answers, a motion was made to dissolve the injunction, when the complainant, in order to show the existence of a mine on the premises, submitted the affidavits of one Grantham and one Asbury :

*Grantham* deposed that, from the direction of a gold vein which he had opened on adjoining land, and his knowledge as a miner, he believed said vein ran through the lands in question, and was a valuable vein.   Also that he had panned for gold on these lands and found from twenty-five to thirty particles of gold, to the panfull (not over one gallon) of earth.

*Asbury* deposed that he had been a practical miner for twenty years; that in company with Grantham, and after the latter had made an examination alone, he made a surface examination of these lands for gold ; and from the gold he thus found, and the location of the lands, he considered them as valuable as any mining property in that country.

The presiding Judge dissolved the injunction, and that is complained of as erroneous.

DOUGHERTY, for plaintiff in error.

LESTER, for defendants.

WALKER, J.

[1.] "It is now well settled, that the continuance or dissolution of an injunction, after the coming in of the an-

swer, depends upon the sound discretion of the Court, according to the nature and circumstances of the case." *Swift vs. Swift*, 13 *Ga. R.* 145. And unless such discretion be abused, this Court will not control the Court below in its exercise. We see no abuse of the discretion in this case. Indeed, we can see no reason for continuing this injunction. Whether there be a valuable gold mine on the lands sold or not, is unknown. If, in the progress of the cause, circumstances may require the strong arm of a Court of Equity to interpose an extraordinary process, to protect the rights of complainant, such aid can be obtained when necessary, for "a Court of Equity is always open." *Code*, sec. 4131.

[2.] It is insisted, however, that the injunction should be continued to prevent Banksmith from selling the lands to an innocent purchaser without notice. Such a transfer, we apprehend, would not affect the rights of complainant. "It is a general rule that *lis pendens* is a general notice of an equity to all the world. 2 *Bouv. L. D.* 94 citing a number of authorities. In *Murray vs. Bollou*, 1 *J. C. R.* 576, Chancellor Kent says : "The established rule is, that a *lis pendens*, duly prosecuted, and not collusive, is notice to a purchaser so as to affect and bind his interest by the decree; and the *lis pendens* begins from the service of the *subpœna* after the bill is filed." We think, then, that the pendency of this suit is notice to the world of the rights of the complainant in these lands, whatever those rights may be, and, that if he duly prosecute his suit, no subsequent purchaser can acquire an interest in them prior to a final decree, which can at all affect those rights.

Judgment affirmed.