JOHN T. OZMORE, plaintiff in error, *vs.* HOOD & KIDDOO, defendants in error.

[TRIPPE, Judge, was providentially prevented from presiding in this case.]

1. The sayings of a person in possession of land are evidence in his favor to show an adverse holding; and in a claim case, the sayings of the defendant in execution while in possession, or of any other person in possession of the land, are evidence for the plaintiff in execution to show that the defendant, or such third person, was not the tenant of the claimant.

2. After the levy of an attachment upon land, it is not competent for the defendant to sell the land even for a valuable consideration, or *bona fide* to pay a debt then due, so as to affect the lien of the attaching creditor.

3. In this case, whilst the charge of the court as to what the jury should find if they believed the land in dispute had been bought with trust funds in the hands of the defendant in execution belonging to the claimant, is objectionable, yet, in view of the whole testimony, the court did not err in refusing to grant a new trial.

Evidence. Possession. Attachment. New trial. Before Judge HANSELL. Randolph Superior Court. November Term, 1873.

On April 1st, 1871, an attachment in favor of Hood & Kiddoo against Thomas Ozmore, for $408 09, principal debt, besides interest and costs, was levied upon lot of land number one hundred and fifty-two, in the ninth district of Randolph county. Judgment was obtained at the November term, 1871, and execution was issued and levy made. A claim was interposed by John T. Ozmore.

The evidence disclosed, in brief, the following facts: On

Ozmore *vs.* Hood & Kiddoo.

September 1st, 1856, Thomas Ozmore was appointed guardian for his children by the ordinary of Randolph county. A considerable sum of money (the evidence fails to disclose the exact amount,) had been previously turned over to him by his father-in-law in trust for his wife and children. His wife died in May, 1856. He married a second time, but a separation ensued, and a libel for divorce was filed. On September 1st, 1871, he executed an instrument in Russell county, Alabama, reciting that in consideration of $3,325 00, held in trust by him for his children, Martha A. Duke, John T. Ozmore and Richard Ozmore, deceased, under a deed of trust from their grandfather, Nathan F. Shirley, he relinquished to them all his right to the lot in controversy. He further bound himself to give immediate possession to them of the tract of land known as the "Ozmore Home place," it being property purchased with said trust money, and known as lot one hundred and eighty-four, in the ninth district of Randolph county. In consideration of which, said children were to give him a receipt in full of all demands to date, upon his delivering to them his note for $600 00, it being the balance due.

The claimant testified that the lot in controversy was turned over to him and his sister, Martha A. Duke, in the latter part of the year 1868, by their father, in part of what was due them; that they were the only surviving children.

Martha A. Duke testified that said lot was turned over to claimant at the aforesaid time, in part of what was due him.

The defendant in execution, Thomas Ozmore, testified that he owned said lot until February, 1871, when he thinks he conveyed it to them, but that perhaps the deed was not executed until September, 1871; that he certainly sold it to them in February, 1871.

There was also evidence tending to show that the trust fund referred to had eventually been invested in this lot, but it was very slight. The testimony as to the possession of the land from the latter part of the year 1868, to February, 1871, when Thomas Ozmore left the state of Georgia, was very con-

flicting.   The plaintiffs in *fi. fa.* sought to show that the possession continued in the defendant by introducing his sayings, and the sayings of the tenants, made while in possession. The claimant admitted that the defendant exercised control over the lot, but alleged that it was as his tenant.   The claimant objected to the admissibility of the aforesaid sayings. The objection was overruled, and he excepted.

The plaintiffs in *fi. fa.* also tendered in evidence a portion of the answer of the defendant to the libel for divorce filed by his wife, made in November, 1869, in which he refers to the value of the crop on the lot in controversy.   He speaks of the land as his own, and refers to claimant's interest in the crop.   This evidence was also objected to.   The objection was overruled, and claimant excepted.

The jury found the property subject.   A motion for a new trial was made upon the following grounds, to-wit:

1st.  Because the court refused to charge as follows: "If the jury believe from the evidence in this case that Thomas Ozmore, the defendant in *fi. fa.*, was the guardian of his children, and that he was indebted to them as guardian, and that he became insolvent, the children are entitled to a preference over creditors to whom he became indebted after the trust funds came into his hands.   And if Thomas Ozmore turned over this lot of land to the children, at a fair price, in part payment of the indebtedness to his children, whether by deed or by delivery of possession to them, then they are entitled to hold it as against the plaintiffs in this case."   Upon which ground the court remarks as follows: "I did charge the jury that if Thomas Ozmore was indebted to his children, either as guardian or trustee, and turned over the land in payment or part payment of such indebtedness, either by deed or by delivery of possession to them, prior to the levy of the attachment, then they are entitled to hold it as against the plaintiffs in this case, but refused to charge the first clause of this request."

2d.  Because the court erred in refusing to charge, without qualification, as follows: "If the jury believe from the evi-

Ozmore *vs.* Hood & Kiddoo.

dence that Thomas Ozmore held funds in his hands in trust for his wife and children, and that the lot of land in dispute was purchased by Thomas Ozmore with that money, then he held the land in trust for his wife and children, and if, after her death, he turned over the land to the children, then they are entitled to hold it as against his creditors." This request the court charged, with the qualification that if the land was turned over to the children before the levy of the 'plaintiffs' attachment, the principle was correct.

3d. Because the court erred in admitting the sayings of the tenants on said lot as to the landlord under whom they held.

4th. Because the court erred in admitting the part of the answer of the defendant, Thomas Ozmore, to the libel for divorce filed by his wife.

5th. Because the verdict was contrary to the law and the evidence.

The motion was overruled, and claimant excepted.

H. & I. L. Fielder, for plaintiff in error.

A. Hood; B. S. Worrill, for defendants.

McCay, Judge.

1. An important question on the trial in this case was the nature of the possession of Thomas Ozmore, from the date of the alleged *turning over* of this land to his children until he left the state. Was he the tenant of his children, or was he holding in his own right? The plaintiffs insisted that the deed made after the date of the levy was the true time of his settlement with his children, and that their claim to the land then began. The claimant insisted that more than a year before this the settlement had been made, the land in dispute turned over, and that Thomas Ozmore held possession from then until he left, as *the tenant* of the children. Was or was it not competent to prove by the sayings of Thomas Ozmore, made during this period and whilst he was in possession, that he was not holding as the tenant of his children, but in his own right? The Code, section 3774, provides that the "dec-

larations of a person in possession of land in favor of his own title are admissible to prove his adverse possession." Under this rule, it seems plain that the declarations of Thomas Ozmore were admissible. He was in possession of the land, and they are in favor of his own title; they were pertinent, and showing that he did not hold as the tenants of his children, but adversely, not only to them, but to the world. So, too, as to the 'negroes; they were in possession, and the first clause of this same section declares that the declarations of a person in possession in disparagement of his own title are admissible in favor of any one, and against privies. They are declarations limiting their own possession and stating who was their landlord. We do not think these declarations would have been admissible to show title in Thomas Ozmore; but they were admissible on the great point at issue, to-wit: whether Thomas Ozmore was the tenant of his children before the date of the levy of the attachment.

2. The court was right in his charge, that to make the claimant's title good the land must have passed out of Thomas Ozmore before the levy. However fair the sale may be, though it be for cash and with the most innocent intentions, it cannot be that a sale of property by the defendant, after the levy of an attachment upon it, can be good against the levy. The property is in the hands of the law, and an attachment on land would be utterly valueless if this were the law. The attachment and the levy is in the nature of *lis pendens,* the officer, by his levy, has impounded the property, and whatever right the defendant has must await the disposal of the court. The doctrine of *lis pendens* does not stand so much upon notice as upon the necessity that the proceedings of a court shall not be capable of being trifled with by the action of the party proceeded against.

3. We think the court erred in refusing the whole of the second request to charge. If this property was in fact bought with trust money—that is, with money belonging to the defendant's children, then in equity, the land was theirs even before it was turned over to them, and it was not subject to the

Ozmore *vs.* Hood & Kiddoo.

debts of the father, even though the formal title was in him. Creditors are not purchasers. Even a secret equitable title may be set up against a judgment. But though the court was in error in limiting the right of the claimants, even if the land was bought with their money, we do not feel authorized to disturb the verdict, because the evidence is overwhelming that it was not so bought. The only witness testifying in favor of this idea is the daughter, Mrs. ........., and her testimony is very loose and plainly *inferential* rather than a statement of facts. She states plumply, it is true, that she saw her grand-father, place $800 00 in her mother's hands before her death, and she died in 1856. Her statement that this money was invested in a certain place, and that place sold, and this bought with the proceeds is, as we have said, plainly a statement of her conclusions. According, too, to another gloss she gives of the transaction, it was part of the arrangement at the time, that Thomas Ozmore was to buy the land and be in debt to his children, they to take the land if he failed to pay. But these statements were contrary to the plain terms of the deed, contrary, also, to the settlement alleged to have been made over a year before the deed, and contrary to the evidence of Thomas Ozmore in his interrogatories. All these state positively that all parties recognized the land as belonging to Thomas Ozmore, that it was conveyed or turned over to the children in *payment* of a *debt he owed them as their guardian*. In none of these transactions or testimony, is anything said or intimated to the effect that the land already belonged to the children because it was bought with *another* trust fund in Thomas Ozmore's hands. Indeed, we are not sure but that by accepting the deed, according to the terms of it, they do not estop themselves from saying the land was in truth already theirs on other grounds, and independently of the debt due by the guardian. We are, therefore, of the opinion that the court did not err in refusing the new trial. The error was not one which, had it not been committed, was of so serious a character as probably to affect the verdict.

Judgment affirmed.