CARMICHAEL *et al. vs.* FOSTER, trustee.*

1. When assets of an estate have been misapplied, and can be traced into the hands of persons affected with notice of the misapplication, the trust still attaches to the assets, and equity will aid in restoring them to their legitimate purpose.

(*a*.) Where the beneficiaries of a certain estate, through their trustee, filed a bill against the executors and certain purchasers under them, alleging that the executors had bought lands of the estate at their own sale at a very inadequate price, and had sold a portion thereof to purchasers with notice, and praying that the sale be set aside and an accounting be had, a prayer could be added by amendment that

---

*See *Inman, Swann & Co., vs. Foster trustee*, decided at the present term.

the amount found to be due to complainants should be paid, "that complainants have judgment for said sum, and that all of said land in possession of said executors or those claiming under them at the time the bill was filed, be subject to levy and sale to satisfy said judgment." It was competent for a court of equity to decree the amount due complainants, and at the same time determine the mode and means of its payment.      -

2. Creditors, who were charged with notice that an executor bought land at his own sale and held a voidable title, and who thereafter extended credit to such executor, did not occupy the position of innocent creditors who *bona fide* gave credit on the faith of the title of their debtor.

3. The filing of a bill by the beneficiaries of an estate to set aside the sale of lands by the executors thereof to themselves, operated as notice to the world of the claim of complainants and their assault upon the title of the executors, and persons giving credit to one of such executors pending this suit, did so subject to the equities of the complainants.

4. While one simple contract as to the same subject-matter and on no new consideration does not destroy another between the same parties, yet a new consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives it.

(*a*.) Where a bill had been filed by the beneficiaries of an estate to set aside a purchase of the lands thereof by the executors at their own sale, and pending such bill certain creditors of one of the executors, acting with the debtor, caused the latter to divide up the note held by the creditors into smaller notes within the jurisdiction of the county court, and so give to the creditors an equal advantage with another creditor who had already sued, this was a novation of the contract, and the payees of such notes received them subject to the equities set up in the bill.

December 30, 1882.

Equity. *Lis Pendens.* Trusts. Administrators and Executors. Before Judge LAWSON. Greene Superior Court. March Term, 1882.

Various judgment creditors of James H. Willis were proceeding to enforce their claims against certain land held by him, known as part of the "Dover place," and F. C. Foster, trustee, claimed the right to enforce a decree held by him against Willis *et al.,* on the land. By agree-

ment, the land was sold and the contest was transferred to the fund, which was distributed under a money rule. The original claimants of the fund were Carmichael, Storey & Brother, Cozart & Hogue, and Foster, trustee, and to these Inman, Swann & Company were added by order of court.

The history and nature of the claim of Foster, trustee, will be found fully set forth in the report of the case of *Inman, Swann & Company vs. Foster, trustee,* decided at the present term of court; and a reference to that case will serve to explain the status both of Foster, trustee, and of Inman, Swann & Company. As there set forth, a bill was filed originally, praying to set aside the sale of the Dover place by the executors of Richard J. Willis to themselves, and subsequently, by amendment, praying relief against the executors and Inman, Swann & Company, who had purchased the interest of one of them. The prayer was that the sales of the land be set aside, or that "your honor will grant a decree requiring said executors or other persons holding under them who are parties to this bill, to pay to complainants their distributive share of the proceeds of said land, with interest on the same, at the valuation placed upon it by said executors, to-wit, $9,000, exclusive of dower, and also their distributive share of the proceeds of the sale of the personal property of said estate, with interest on the same; that said complainants have judgment for such sum against defendants, and that all of said land in possession of said executors, or those claiming under them, at the time this bill was filed, be subject to levy and sale to satisfy said judgment." This bill was filed February 11, 1876.

The case was referred to an auditor, to whose report exceptions were filed. The jury found the following verdict: "We, the jury, sustain exceptions 1, 2, 3 and 4, and find for complainants $6,330.24, and find the land of the estate of R. J. Willis subject." Upon this verdict the following decree was entered, November 22, 1879:

Carmichael *et al. vs.* Foster, trustee.

\* \* \* "It is decreed that complainants have judgment against defendants for $6,330.24, which is and shall be a special lien upon (the Dover tract of land), and that execution in favor of complainants issue against said defendants for said sum of $6,330.24 to be levied on the tract of land aforesaid."

Under this decree a *fi. fa.* issued and was levied upon the Dover place as belonging to the estate of Richard J. Willis, deceased. Such was the claim of Foster, trustee.

Inman, Swann & Co. purchased the interest of Heard, one of the executors, in the Dover place, in 1873. The deed was made by Heard and his wife, and contained, at the conclusion of the description of the property, the following clause: "Being the same land purchased by Stephen D. Heard, executor, together with the other executors of the will of Richard J. Willis, with proceeds of sale of certain property of said Richard J. Willis." In 1874, 1875 and 1876, Inman, Swann & Co. rented to James H. & L. B. Willis, and in 1879 they recovered a judgment for the rent due for those years. In 1878 they also recovered a judgment for goods furnished to defendant, Willis, in 1874.

Storey & Brother claimed the fund in court under several judgments, dated April 7, and August 4, 1879, against defendant, J. H. Willis, and others, for supplies. This indebtedness, to the amount of $709.00 was contracted prior to the filing of the bill of Foster, trustee.

Cozart & Hogue held a note of James H. Willis prior to the filing of the bill of Foster, trustee. In 1879, for the purpose of giving Cozart & Hogue equal advantage with Storey & Brother, who had already commenced suit against him, Willis divided up the note by the former, and gave small notes in its stead, in order to give the county court jurisdiction, and these small notes having been sued to judgment in 1879, furnished the basis of Cozart & Hogue's claim to the fund.

Carmichael held several *fi. fas.* against James H. Willis, one of them founded on a debt created prior to the filing of the bill by Foster, trustee, the others subsequent thereto.

The jury found for Carmichael as to his *fi. fa.*, based on a debt prior to February 11, 1876; also in favor of Storey & Brother for the amount of their claim arising prior to that date; and in favor of Foster, trustee, against Cozart & Hogue and the holders of other *fi. fas.* based on debts subsequent to the filing of the bill. The claimants against whom this finding operated moved for a new trial (except as to Carmichael's oldest *fi. fa.*) on the following grounds:

(1.) Because the court refused to give in charge the following written request: " Counsel for the creditors contesting with the plaintiff in *fi. fa.*, Foster, request the court to charge that the verdict and decree upon which the *fi. fa.* of the said Foster is founded did not rescind the purchase by the executors at their own sale; and, further, that if said verdict embraced the share of complainants in the $9,000.00 which the executors paid for the Dover tract, such a verdict confirmed as to them the purchase of the executors at their own sale, whether said purchase was fraudulent or merely voidable.

(2.) Because the court charged that the effect of the verdict and decree in the bill in equity upon which the *fi. fa.* of the said Foster was founded, said bill being against Jas. H. Willis, L. B. Willis and Inman, Swann & Co., was to establish that the alleged sale of the Dover tract of land by the executors to Strain, and from the latter to the executors, was fraudulent; that in fact there never had been any sale of said tract, and said tract had always remained in the estate of the testator, and was therefore subject first to pay said *fi. fa.* of the said Foster as against these said movants.

(3.) Because the court charged that all the *fi. fas.* of of these movants founded on debts created subsequent to the filing of the bill in equity were postponed to the *fi. fa.* of Foster aforesaid.

Carmichael *et al.* *vs.* Foster, trustee.

(4.) Because the court charged that the jury should find against the *fi. fa.* and distress warrant of Inman, Swann & Co., they being parties to the decree in said bill in equity and bound by it.

(5.) Because the court refused to charge the following written request: " The court is requested to charge that the record of the writ of F. C. Foster, trustee, and the verdict thereon, without decree therein or with decree therein, are not evidence against Inman, Swann & Co.'s judgments."

(6.) Because the court overruled the motion of counsel for movants to rule out as against Inman, Swann & Co., the record in the case of F. C. Foster, trustee, against J. H. & L. B. Willis, and Inman, Swann & Co., on the ground that said record was irrelevant.

(7.) Because the court charged that if Cozart & Hogue had a note of James H. Willis, made and executed before the filing of the bill aforesaid, and said note was after said filing, by agreement of the parties thereto, divided into small notes in order to give jurisdiction to the county court of Wilkes county, it being the intention of the said James H. Willis, by such division, to give Cozart & Hogue equal advantage with Storey & Bro., then suing him, and said new notes are the foundation of *fi. fas.* of Cozart & Hogue; then that the said new notes were upon a new consideration, and were a novation of the original note, and the *fi. fas.* of Cozart & Hogue are postponed to that of Foster aforesaid.

(8.) Because the verdict is contrary to law and evidence.

The motion was overruled, and movants excepted.

JAS. S. HOOK; S. F. WEBB; J. C. REED, for plaintiffs in error.

F. C. FOSTER; J. A. BILLUPS; H. T. & H. G. LEWIS, for defendants.

SPEER, Justice.

This was a rule to distribute money brought in Greene superior court, arising from the sale of certain lands by the sheriff of said county.

Certain *fi. fas.* in favor of creditors of Jas. H. Willis were levied on land, sold as property of J. H. Willis, and a *fi. fa.* in favor of F. C. Foster, as trustee, was likewise levied on same land as a part of the assets of the estate of R. J. Willis, deceased. By agreement the land was sold under these levies and the proceeds brought into court, and it was agreed the liens of the several *fi. fas.* should be transferred from the land and attach to the proceeds of sale, and that if the lien of the Foster *fi. fa.* was of superior dignity, the proceeds should be appropriated to it, otherwise the applications should be according to their respective priorities. Under an issue made, the facts were submitted to a jury for trial, who, under the charge of the court, returned a verdict in favor of certain *fi. fas.* in favor of the creditors of James H. Willis, based upon an indebtedness contracted by him prior to 11th February, 1876, and found after these *fi. fas.* were paid balance should be applied to the Foster *fi. fa.* The creditors of James H. Willis, who were excluded by the verdict, made a motion for new trial on certain alleged errors in the charge of the court in his instructions to the jury as to the distribution of said fund, which were overruled, and they excepted.

The contest arose as to the priority of the liens of the *fi. fas.* of certain creditors of J. H. Willis, who had sued and obtained judgments against him, and a decree rendered in chancery in favor of Foster, as trustee, for certain devisees under the will of Richard J. Willis, deceased.

It appears that the will filed by Foster, as trustee, on 11th July, 1876, was against the two surviving executors of Richard J. Willis, J. H. Willis being one, and Inman,

Carmichael *et al.* *vs.* Foster, trustee.

Swann & Co., for the purpose of vacating and setting-
aside a sale of the lands had at the executors sale, and at
which sale the executors became the purchasers at a price
greatly under its value.    On the trial of the bill, etc., a.
verdict was had for complainants for the sum of $6,333.-
24, and also finding the land of the estate of Richard J.
Willis subject thereto.   Upon this verdict a decree was.
rendered directing execution to issue in favor of complain-
ants to be levied of said tract of land.

Under the proofs submitted on the trial of this rule,.
the court charged :

(1.) That the effect of the decree was to declare the sale
of the lands by the executors to themselves, to be fraud-
ulent and void, that the title remained in the estate, and
the land was subject to pay the *fi. fa.* of Foster, trustee.

(2.) That the *fi. fas.* of the creditors of James H. Wil-
lis, founded on debts created subsequent to the filing of
complainant's bill (11th February, 1876,) were to be post--
poned to the *fi. fa.* of Foster.

(3.) That the *fi. fa.* and distress warrant of Inman,.
Swann & Co. were not entitled to be paid out of the fund,.
because they were parties to the bill and decree and were
bound by it.

(4.) That if Cozart & Hogue, creditors of J. H. Willis,.
had a note against him prior to the filing of the bill, and
after this the parties to said note by agreement divi-
ded said note into small notes, in order to give jurisdiction
to the county court, the intention being by such division
to give Cozart & Hogue equal advantage with Story, then
suing J. H. Willis, and said note so divided are the foun-
dation of the *fi. fas.* of Cozart & Hogue, then the notes
thus divided were upon a new consideration, and were
a novation of the original note, and the *fi. fas.* of Cozart
& Hogue were postponed to that of Foster.

1. The point most earnestly pressed before this court
against the charge of the court in the first ground of the
motion for new trial, was that the defendant in error, by

his bill, had but two courses to adopt in asserting the rights of his *cestuis que trust*—either to seek to vacate the sale and put the title again in the estate of testator, or if he sought a decree in money, to affirm the sale, and take the proceeds by a money decree. And as the plaintiffs in error claim that complainant below sought and obtained a money decree, that this affirmed the sale by the executors, the title passed from the estate, vested in James H. Willis, and the fund in hand should be paid to his creditors according to the priority of liens against him.

While it is true, that under the bill of defendant in error as filed, and the prayer thereof, an accounting is prayed for and also a decree setting aside said sale, canceling deeds, etc., yet, by an amendment to said paper, "a decree is also sought requiring said executors or persons holding under them, who are parties to the bill, to pay complainants their distributive share of the proceeds of said land, with interest, at the valuation of $9,000.00, and that complainants have judgment for said sum, and that all of said land in possession of said executors, or those claiming under them at the time the bill was filed, be subject to levy and sale to satisfy said judgment."

"It is a clearly established principle in equity jurisprudence, that whenever the trustee has been guilty of a breach of the trust and has transfered the property by sale or otherwise, to any third person, the *cestui que trusts* has full right to follow such property into the hands of such third person, unless he stands in the position of a *bona fide* purchaser for value without notice." 3 Howard Rep. (U. S.) 401 ; 51 *Ga.*, 181. The same principle is recognized in the Code 3152, which provides "when assets are misapplied and can be traced in the hands of the person affected with notice of the misapplication, the trust still attaches to the assets, and equity will aid in restoring them to their legitimate purpose." Here the court charged that the effect of this verdict and decree was to declare the sale of said lands fraudulent, and that

James H. Willis and Inman, Swann & Co. had purchased the lands of the estate affected with notice of this fraudulent sale and misapplication of the assets, and hence the trust in favor of these complainants still attached to those assets and they should be subject to this judgment.

The mere fact that complainants, in the accounting sought in connection with their pursuit of these assets, recovered a verdict in money to be paid out of these assets, cannot affect the principle involved. It was eminently proper, under the pleadings for an account, that equity should decree the amount due simultaneously with the mode and means of its payment. We can see, therefore, no error in the court refusing to charge as complained of, or in charging as set forth in the record.

2. Nor do we find any error in the court holding that Inman, Swann & Co. were not entitled to participate in the distribution of this fund. They were, under the record, charged with notice that the title to these lands was voidable in J. H. Willis, and with such notice they did not occupy the position of innocent creditors, who *bona fide* gave credit on the faith of the title he held. This notice came to them in 1873, and the credit they extended to J. H. Willis was after that period.

3. Neither was there error in admitting the record between F. C. Foster, trustee for these complainants, *vs.* J. H. Willis *et al.* in evidence on the trial of this issue.

The court instructed the jury that all the *fi. fas.* founded on defendants created subsequently to the filing of complainant's bill should be postponed to the *fi. fa* in favor of Foster as trustee. This ruling was in full harmony with the one that excluded the judgments of Inman, Swann & Co., from participation. Whenever complainants filed their bill, this "*lis pendens*" was notice to all the world of the claim of these complainants and their assault upon the title of J. H. Willis, and any one who gave credit with such notice, gave it of course subject to the equities of the complainants. 1 Johns. Ch. Rep. 576; 35 *Ga.*, 213; 53 *Ga.*, 118.

It is claimed also that the court erred in instructing the jury that Cozart & Hogue were not entitled to participate in this fund before Foster, if they believed from the evidence that since the filing of the bill their notes upon which their *fi. fas.* were obtained, by agreement between the parties, were received by dividing their original debt into small notes in order to give the county court jurisdiction to entertain suit thereon, if it were the intention in so dividing, to give Cozart & Hogue equal advantage with Story, whose notes were then in suit—that said notes, so divided, were upon a new consideration, and were a novation of the original debt due by Willis to Cozant & Hogue.

One simple contract as to the same matter, and on no new consideration, does not destroy another between the same parties.   Code, 2724.

Was there a new consideration entering into these new notes taken in lieu of the original debt?

" A consideration is valid if any benefit accrues to him who makes the promise, or any injury to him who receives the promise."   The obvious purpose here, on the part of the promissor, was to give Cozart & Hogue, not only an equal chance with Story, but also a priority of lien over these complainants to be paid out of this property.   It was to pay his debts out of this property rather than to pay complainants out of the assets of the estate, and hence it clearly was to his benefit that they should have prior liens to reap such a result.   The decree complainants were seeking was to subject this property as trust assets in the hands of the trustee, but, if, in dividing these notes, Cozart & Hogue were to secure a prior lien and be paid first out of the assets, of course it was a benefit to Willis to divide the debt, and hence this new consideration entering into it made it a new contract, and we find no error in the court holding its lien should be postponed to the lien of Foster, trustee.

Judgment affirmed.