### STEPHENS *et al. vs.* WHITEHEAD *et al.*

A bill alleged, in brief, as follows: Complainants, as merchants doing separate businesses, at different times sold to S. & F. goods on credit, each acting independently of the other. After there had been an extension of time, the firm failed and assigned their partnership effects for the benefit of their creditors alike. The assignment was rejected and it was canceled, and the goods redelivered to the assignors. They proceeded, both by day and night, to sell the goods at ruinous under-values as rapidly as possible for cash. The goods were clandestinely removed by each of the purchasers and converted into money, so as to place them beyond the reach of complainants and other creditors of the firm; and these transactions were entered into between such firm and the purchasers to defraud the complainants and other creditors. After the sale and conversion of the goods into cash, complainants brought suits on their respective claims, obtained judgments, and the executions issued were returned *nulla bona.* They then joined and filed this bill against several persons residing in several counties, who had made these separate purchases from their common debtors for the purpose of recovering from each of them the value of goods alleged to have been thus fraudulently converted by him. No combination or concert of action was shown between them, but there was such between each of them and the debtors, who were not made parties:

*Held,* 1st, that the remedy of complainants, if any, was under the statute giving them an attachment against debtors who sell or convey property liable to the payment of their debts, for the purpose of avoiding the payment of the same, or who threaten or prepare to do so, or shall make a fraudulent lien thereon. If the funds could be reached in equity, they could be as well reached by garnishment under attachment; and none of the circumstances which generally give a ground for resort to equity appear.

(*a.*) Ordinarily a creditor without a lien has no status in court for the purpose of filing a creditor's bill.

2, 3. There was a misjoinder both of complainants and defendants, especially as the debtors, who were the only connecting link between the creditors and the defendants, were not made parties.

Nor was there any such connection between the different claims of the complainants as would authorize them to join in this bill.

(*a.*) While multifariousness is not favored as a defence, and there is no general rule for determining whether a bill is multifarious or not, and it must be left to the sound discretion of the court under the facts of each case, yet it is settled that a complainant cannot demand several distinct matters, of distinct natures, of several defendants, nor several matters perfectly unconnected, against one defendant.

(*b.*) This ruling does not conflict with that of *City Bank of Macon vs. Bartlett*, 71 *Ga.*, 797.

(*c.*) As equity has no jurisdiction, the allowance of an amendment making the debtors parties, and allowing one of the complainants to proceed, would be useless.

December 15, 1885.

Debtor and Creditor. Attachment. Garnishment. Liens. Equity. Misjoinder. Multifariousness. Parties. Before Judge STEWART. Rockdale Superior Court. February Term, 1885.

Reported in the decision.

J. N. GLENN, for plaintiffs in error.

A. C. McCALLA; A. C. PERRY, for defendants.

HALL, Justice.

The bill in equity makes this case : The complainants, as merchants, doing a separate business, sold, at different times, and on different terms of credit, goods to Smith & Farmer. Each of them, in his dealings with this firm, acted independently of the other. After there had been an extension of time to this firm as to the two debts in question, they failed and made an assignment of their partnership effects for the benefit of all their creditors alike. This assignment the creditors rejected, and it was cancelled ; the goods it conveyed were re-delivered by the assignees to the assignors, who disposed of them for cash as rapidly as possible. It is alleged that these sales were

made at a ruinous undervalue, both in the day-time and in the night, and the goods purchased were clandestinely removed by each of the purchasers, and converted into money, so as to place them beyond the reach of complainants and other creditors of Smith & Farmer, and that the transactions were entered into between Smith & Farmer and these purchasers to defraud complainants and others of their creditors. After these goods had been sold and removed and converted into cash, complainants instituted suits upon their respective claims, obtained judgments, and issued executions thereon, which had been returned *nulla bona.* Thereupon they joined and filed this bill against several persons residing in several different counties, who had made these separate purchases from their common debtors, for the purpose of recovering from each of these defendants the value of the goods alleged to have been thus fraudulently converted by him. The bill does not show or state any combination or concert of action between the defendants in advancement of the fraudulent design of Smith & Farmer towards their creditors ; on the contrary, it is manifest that each of the defendants, in the purchases he made, acted independently of his co-defendants; then, as between themselves, there was no conspiracy, but there was such a conspiracy between each one of them and Smith & Farmer, who are not made parties to this bill.

The defendants filed a demurrer to this bill upon several grounds, but it is necessary to notice only three of them, viz. :

(1.) That there is a misjoinder of both plaintiffs and defendants, as well as causes of action ; and that in each of these respects, the bill is multifarious.

(2.) That Smith & Farmer are necessary parties, and they are not made defendants to the bill ; therefore, it cannot be maintained against defendants, etc.

(3.) That there is no equity in the bill, and that if complainants have any remedy at all, it is at common law, which affords them as ample relief as could a court of equity.

This demurrer was sustained by the court upon the first and third grounds, and the complainants excepted to the decree, and sued out their writ of error.

1. We will consider the last ground first. We agree with defendants' counsel, that the remedy of these parties, if any they had, was under the statute giving them an attachment against debtors who sell or conceal property liable to the payment of their debts for the purpose of avoiding the payment of the same, or who threaten or prepare so to do, or shall make a fraudulent lien thereon. When the attachment issues, it proceeds as to levy, garnishment, etc., as do other attachments. Code, §§3297, 3297 (a), 3300. If the funds in the hands of the defendants could be reached in equity, they could also, as a general rule, be reached by process of garnishment. There is nothing peculiar in this case rendering a resort to equity necessary, as that the goods which went into the hands of defendants were those procured by their vendors from complainants by false representations, etc. That Smith & Farmer, when they obtained this credit, made fraudulent statements as to their solvency and the state of their business is distinctly charged, but it is not definitely alleged that the goods obtained by them under these false representations were those sold to the defendants, or either of them, or what part of such goods each of the defendants got, or which of them purchased and converted any of the same. The complainants had no right to any of this stock of goods; they had acquired no lien thereon, and were not in a situation to perfect such a lien, as they obtained no judgment or statutory lien against their debtors until sometime after the transaction between such debtors and their vendees had been fully executed and the property had been turned into money and appropriated by the latter. These, as a general rule, are the conditions upon which a creditor may invoke the aid of equity. Ordinarily a creditor without such a lien has no status in court for the purpose of filing a creditor's bill. The possibility of

a judgment will not suffice. Waits' Fraudulent Conveyances and Creditors' Bills, §73, and citations. Had the property remained *in specie*, in the hands of either of these defendants when the judgment was obtained, it might have been levied on by the execution issuing therefrom, and upon the trial of an issue made by a claim interposed by such vendee, if it had been found that he procured it with the fraudulent intent, and with a view to defeat the collection of the complainants' debts, it could be subjected to the payment of the same.

2, 3. We think there can be little doubt, that there is a misjoinder both of complainants and respondents, as well as of causes of action in this case; especially as Smith & Farmer, the debtors of complainants, are not made parties, as they should have been; for it is only through them that the defendants can be reached by their creditors; they are the all-important link between their creditors and those dealing with them fraudulently. That multifariousness is not a favored defence, especially where, instead of advancing, it would defeat the ends of justice, is quite true, and that there is no general rule for determining whether a bill is multifarious or not, but that it must be left to the sound discretion of the court to decide the matter under the circumstances of each case, is equally true; still we understand the doctrine to be to this extent well settled, that a complainant is not permitted to demand several distinct matters of distinct natures of several defendants, nor several matters perfectly unconnected against one defendant. *Marshall vs. Means*, 12 *Ga.*, 61, 65. This case, in some of its leading features, is all-fours with that now under consideration.

There is nothing in the *City Bank of Macon vs. Bartlett*, 71 *Ga.*, 797, in conflict with this view, as was supposed and insisted by the learned counsel for the complainant. There the rights of the contestants grew out of subscriptions to stock in one and the same corporation, and related to the administration of its affairs,

as was alleged, to the prejudice of the complainants and the advantage of the respondents, both as directors and stockholders.   Whatever rights either party had arose under and sprung out of the charter of this bank and the manner in which its franchises and privileges had been used.   There is none but the slightest connection between the different claims of the complainants.   Each credited the same persons, that is all, and each may have suffered from the same wrong, committed by his debtors in conjunction with divers other persons, between whom there was no concert or complicity.   Each of these latter would be responsible for the injury done by himself, but not for such as was done by the other defendants or either of them.

The question raised by this state of facts has been frequently passed upon by the courts of equity, both in England and this country, and generally with the same result. Such suits have been usually considered multifarious. Rayner *vs.* Julian, 2 Dickens, 677 ; Brooks and another *vs.* Lord Whitworth, 1 Madd. Ch. R , 87 ; Attorney General *vs.* Moses *et al.*, 2 *Id.*, 305 ; Salvidge *vs.* Hyde, Jacob's Ch. R., 157; Marcos *vs.* Pebrer, 3 Simon, 466 ; Dunn *vs.* Dunn, *Ib.*, 329 ; Whaley *vs.* Dawson, 2 Sch. & Lef., 367, are precisely in point, and so is Gaines *vs.* Chew, 2 Howard's S. C. R., 639 ; 1 Daniell's Ch. Pr., 391, 393.   These references might be greatly extended, but we deem it unnecessary.

If equity had jurisdiction of this case, we might allow the bill to be so amended as to make Smith & Farmer parties, and to permit either one of the plaintiffs to proceed against them, and any one of the other defendants ; but since it is not cognizable by that court, any amendment would not remedy this difficulty, and would be useless.   The decree of the court sustaining the demurrer and dismissing the bill was right.

Judgment affirmed.