MANHEIM *et al. vs.* CLAFLIN & COMPANY.

1. Where a creditor has an honest mortgage on personalty, and has
   foreclosed the same at law, he has no occasion, either as a substitute
   for, or in aid of his foreclosure proceeding, to file a bill in a court of
   equity in order to realize the fruits of his foreclosure as against
   fraudulent mortgages of prior date on the same property, which are
   also foreclosed, and under which the property has been seized and
   is about to be sold.   The remedy of the honest creditor is ample,
   full and adequate at law, as he may attack by affidavit under ¿3979
   of the code, or, if necessary, may obtain, under the act of October
   16th, 1885, an injunction, the appointment of a receiver, etc. from
   a court of law.   And especially, under the act of October 24th, 1887,
   is he limited in his mode of obtaining equitable relief to a petition
   addressed to the superior court.
2. A creditor whose debt is not in judgment, and who has no lien by
   contract upon certain goods not fraudulently purchased from him-
   self, or if so purchased, which he does not seek to reclaim by a
   rescission of the contract, cannot pursue such goods by bill in
   equity, in the hands of a third person who, in fraud of the creditor,
   has purchased or pretended to purchase them from the debtor.   His
   remedy is by attachment under ¿3297 of the code.   And even did he
   need equitable relief, the act of 1887, above cited, would confine him
   to petition addressed to the superior court as the mode of obtain-
   ing it.

July 11, 1888.

Debtor and creditor.   Practice.   Equity.   Mortgages.
Fraud.   Attachment.   Before Judge KIBBEE.   Pulaski
county.   At chambers, February 25, 1888.

H. B. Claflin & Co., of New York, brought their bill,
in February, 1888, against Barney Manheim, Sebelia J.
Fleetwood, William Sommer, Sommer Brothers, W. N.

v 81—9

Fleetwood & Sons and W. G. Hunt, all of Pulaski county, alleging, in brief, as follows : On August 25, 1887, Manheim applied to them for credit, stating that he was solvent and worthy of credit. On the faith of this statement, they extended him credit for $4,102.82, which amount is due and unpaid, though they have demanded payment which was refused. The statements so made were totally false, as Manheim was then and is now totally insolvent. They were made with intent to defraud complainants and did deceive them. On information and belief, complainants charge that Mrs. Fleetwood, through her husband, W. N. Fleetwood, acting as her agent, seeking to wrong them, etc., pretends to be a mortgage creditor of Manheim for $2,773.23, the mortgage being given to secure a pretended debt for that amount and covering Manheim's entire stock in Hawkinsville. This mortgage W. N. Fleetwood, as agent, has foreclosed and caused the sheriff to levy the *fi. fa.* on the stock, which the sheriff will sell unless prevented. He made another pretended mortgage on January 7, 1888, to Fleetwood, as agent, for $3,773.20, to secure a note for that amount, which mortgage Fleetwood had recorded and foreclosed on January 10, 1888, had execution issued the same day, and caused it to be levied on the stock at Hawkinsville. Fearing that they all might not be enough to cover the stock of Manheim, on January 7, 1888, another pretended mortgage was made by him to a pretended firm of W. N. Fleetwood & Sons for $846.69, which was recorded January 17, 1888. They further charge, on information and belief, that, at the time this mortgage was foreclosed, Manheim tried to cover his stock at Abbeville by a pretended sale to one Sommer or Sommer Brothers for $1,600, Sommer knowing at the time that Manheim was insolvent. At the time of the sale, a judgment had been obtained

in Pulaski superior court against Manheim for $127.13 principal, etc. They further charge that, by their instructions, their agent went to Hawkinsville when they learned that the stock had been levied on, and induced Manheim to give them a note and mortgage on his stock for their claim. The agent put it at once on record and demanded payment, which being refused, he foreclosed the mortgage and had execution issued. Complainants claim that this is a just lien on the stock and should not be interfered with by fraudulent ones. They pray injunction against the sheriff; cancellation of the mortgages given to Mrs. Fleetwood and Fleetwood & Sons; setting aside of the sale to Sommer Brothers; that Sommer be required to deliver the goods to the receiver to be appointed, and if he had disposed of them to account to the receiver for them, and until the appointment of the receiver that he be restrained from disposing of or interfering with them; that a receiver be appointed to take charge of all the assets of Manheim and hold them subject to the further orders of the court; that complainants have a decree for the amount of their debt, costs, etc., to be satisfied out of the sale of the assets of Manheim; and for *subpœna*.

On the bill, a temporary restraining order was granted, and a rule to show cause why an injunction should not be granted and a receiver appointed was, issued.

The defendants demurred to the bill on the grounds, among others, that there was no equity in it; that there was a complete common law remedy; and that the facts set out did not show any cause for the interference of a court of chancery by injunction. They all answered the bill, denying the material allegations of it, and setting up their equities. It is unnecessary to set forth the testimony introduced at the hearing.

The chancellor passed the following order: That an

injunction be awarded to stay the proceedings of respondents at law until the further order of the court ; that a receiver be appointed to take charge of the stock and effects of Manheim, giving bond in the sum of $6,000, conditioned for the faithful performance of his duties; that upon the execution of the bond, the receiver have the management of all the effects of Manheim, with power to collect outstanding debts and effects, to employ necessary agents and clerks, and to pay them proper salaries ; that the receiver be authorized to continue the business of Manheim until the court should otherwise direct, or he might sell, at private or public sale (public sales being made only after two weeks' advertisement), part or all of the effects in his hands as could be sold to the best advantage, proper expenses to be paid out of the money arising out of the sale or from the collection of amounts due Manheim; that the sheriff deliver to the receiver the stock of Manheim in his hands; that Manheim or whoever had the custody of the books and accounts, notes and other evidences of debt, deliver them to the receiver on demand ; that William Sommer turn over to the receiver all the goods, etc., in his hands under the alleged sale of the Abbeville stock ; that the receiver manage and sell the same as he was ordered to with the stock at Hawkinsville; that the receiver keep separate accounts of the sale of the latter stock and the expenses incident thereto, and make a report of his actings at such time as the court might direct, and especially that he make a full report on or before the first day of the May term, 1888, of the court ; and that he proceed as rapidly as possible to convert all the assets of Manheim into cash, making special deposits of all moneys realized by him, reserving only enough to pay proper expenses.

The respondents excepted to the refusal to sustain

their demurrer so far as to prevent the grant of injunction or appointment of receiver; and to the final decision of the court.

MARTIN & SMITH and JORDAN & WATSON, for plaintiffs in error.

A. C. PATE and WEIL & BRANDT, *contra.*

BLECKLEY, Chief Justice.

1. No one can doubt that foreclosing a mortgage on personalty, under §3971 of the code, is a proceeding at law; and §3979(a) gives the mortgagee the option of foreclosing in equity. Here the mortgagees, Claflin & Co., took the legal remedy in preference to the equitable, and then, without the least necessity for it that we can see, invoked the aid of equity to enable them to realize their money out of the goods covered by their mortgage. This they did solely because there were prior fraudulent mortgages in favor of other persons covering the same goods, which mortgages had already been foreclosed and levies made. But §3979 of the code provides that "if any creditor of the mortgager, whether his debt be in judgment or not, desires to contest the validity or fairness of the mortgage lien or debt, he may make an affidavit of the grounds upon which he relies to defeat such mortgage, and upon filing the same with the levying officer, together with a bond and good security, payable to the mortgagee, and conditioned to pay all costs and damages incurred by the delay, if the issue be found against the contestant, it shall be the duty of such officer to return the same to the court to which the mortgage *fi. fa.* is made returnable, to be tried in the manner prescribed above for an affidavit of illegality by the mortgager." Here is a

specific legal remedy by which to attack the fraudulent mortgages, and the bill does not explain why it was not used, or why, if used, it would not be efficacious. Again, suppose it would not be so, and that for some good reason an injunction, the appointment of a receiver, etc. would be needful, there would be no occasion for changing forum and resorting to a court of equity, since by the act of October 16th, 1885, (acts 1884–5, p. 36,) a court of law is just as competent to supply all such aid and render it effectual. Moreover, since the act of 1887, (acts 1887, p. 64,) any equitable relief appropriate to such a case, whether by injunction receiver or otherwise, can be obtained by petition addressed to the superior court, and as the act was designed to establish uniformity, by that mode only. Thus the code, §3979, the act of 1885 and the act of 1887, all point to the superior court, the one to which all the mortgage *fi. fas.*, including that in favor of Claflin & Co., were returnable, as a court competent to settle every question of every kind, legal or equitable, which has arisen or can arise in this litigation, a court competent also to supply all the machinery requisite to securing in behalf of those entitled to them all the fruits of the controversy. Why, then, should Claflin & Co. turn aside and enter, or try to enter, another forum, a technical court of equity?

2. As to the goods in another store, those not included in the mortgages and which were sold fraudulently by Manheim, the debtor, they were subject to attachment under section 3297 of the code. The statute embraced in that section was passed for just such a case, a case in which the creditors have no judgment and no lien by contract, and the bill suggests no obstacle to the use of the attachment remedy. If these goods were fraudulently purchased by Manheim, from these creditors, Claflin &

Co., that is, by committing a fraud upon them, they had a right to rescind their contract of sale, or pray for a rescission and reclaim the goods as their own, but this course they have not taken. They proceed against the goods as the property of Manheim, their debtor, and do not seek to defeat his title but only the title which he has passed, or attempted to pass, into his fraudulent or pretended vendee. This they could do as well by attachment as by bill and receiver, even were equity jurisdiction exercisable by bill still in full vigor, as full vigor as it ever was; but we apprehend that did these creditors need equitable relief on this branch of their case, they would now have to obtain it, not by bill in a technical court of equity, but by petition, according to the act of 1887, to the superior court. On such a petition that court could act as a court of equity, or as a court of law, or as both; that is, it could and would act as the superior court, simply using all the remedies and remedial machinery appropriate to the case, and administering all the relief, legal and equitable, to which the respective parties were entitled. A case in the superior court on such a petition might have both feet in equity or both in law, or one in equity and the other in law. But with few if any exceptions, the superior court is no longer a technical court of equity, the court whose jurisdiction and intervention this bill invokes; for most cases it is more, *a court of law and equity.* To reach it as such, however, it has to be approached not by bill but by petition, and the defendant has to be warned to appear not by *subpœna* but by process. As the act is so plain, and its provisions so simple, there seems to be no reason why it should not be complied with, and the scheme of uniformity which it seeks to establish be observed. As this is the first time we have had occasion to apply it, we shall start by applying it correctly,

and not attempt to sacrifice the law in order to save the case.

. The chancellor erred in granting an injunction and appointing a receiver, and in all the rest of his order.

Judgment reversed.