906

COLEMAN *et al. v.* LAW, trustee.

*G. C. Bidgood,* for plaintiffs.

*B. J. Dasher* and *M. H. Blackshear,* for defendant.

Hines, J. On October 4, 1924, plaintiffs filed their equitable petition against their mother, in which they sought to set up and have declared a resulting trust in their favor in certain land to which their mother held the legal title. The facts upon which they based their claim are fully set out in the statement of facts preceding the opinion when this case was first before this court. Plaintiffs alleged that their mother, in order to defeat their rights in said land, procured, on December 14, 1919, a loan of $3,500 from the John Hancock Life Insurance Company, without their knowledge, and executed to said company a deed to secure said loan, without any right to do so; that they did not receive any part of the proceeds of this loan, which was then due together with interest and taxes for two years; that their mother permitted the loan to mature and the interest and taxes to accumulate, with the fraudulent intent to permit the land to be sold to pay said loan, in order to defeat their rights in said land; that she was threatening to allow said land to be sold therefor, when she was amply able to pay off said loan and had in hand not only sufficient funds to pay the same arising from rents and profits therefrom, but owned improved farm lands consisting of land lots Nos. 5 and 6 in the 16th land district of Laurens County, containing 202-1/2 acres each, and 43 acres, more or less, in land lot 25 of said district; that their mother was then threatening to sell said lands, convert the same into cash, and leave the State, permitting the lands in which they sought to set up a resulting trust in their favor to be sold for the encumbrance thereon; that she was seeking to render herself insolvent in order to defeat their rights, and if she were permitted to carry out her plan she would sell and dispose of all her valuable property, and permit the lands in which they set up said resulting trust to be sold under the fraudulent encumbrance placed thereon by her; that in the event said lands, in which they were seeking to

establish said trust in their favor, were sold under said encumbrance, and for the taxes due thereon, they would be entitled to a judgment against their mother for the value of their four-sevenths undivided interest therein and the rents; but that if their mother should pay said encumbrance they would be entitled to a judgment for a four-sevenths undivided interest in said land, and to a judgment for a certain sum as their part of the rents thereof. They prayed that the defendant be enjoined from selling, giving away, mortgaging, or in any way encumbering any of her property, and especially the land lots above described; that they have judgment against her for the full value of the lands described, in the event she permitted the same to be sold under said encumbrance, and that said judgment be made a special lien against the property of the mother, consisting of the above two land lots, and a general lien against all her property. No injunction was granted.

To this petition the mother demurred. Her demurrer was overruled, and this judgment was affirmed. *Stonecypher* v. *Coleman*, 161 *Ga.* 403 (131 S. E. 75). The case was then tried, and a verdict and decree were rendered in favor of the plaintiffs against the mother. Her motion for a new trial was overruled by the court, and this judgment was affirmed. 169 *Ga.* 294 (150 S. E. 164). In the decree a general lien was given to the plaintiffs upon all the property of their mother, and a special lien upon land lots 5 and 6. The decree further provided that the clerk should issue an execution thereon generally against all of the property of the defendant, and specially against said land lots. Execution was so issued, and was levied upon said two land lots. William A. Law, trustee for the Penn Mutual Life Insurance Company, filed a claim based upon a loan deed dated October 7, 1925, from the mother to Law and Steebles as trustees for said company, conveying said two land lots to secure a loan of $6,000. On September 9, 1925, the mother had bargained said lots to E. C. Morris for $13,000, taking his notes for the purchase-money, and giving him her bond for title, in which it was provided that Morris should assume the loan from the Penn Mutual Life Insurance Company, then in process of negotiation. The difference between this loan and the purchase-price was evidenced by certain promissory notes executed by Morris to Mrs. Stonecypher, or to her husband, H. C. Stonecypher. One of these notes was for $2,000, payable September 28, 1928, and the

other was for $5,000, payable October 1, 1929, with interest from date. Pending the suit between plaintiffs and their mother; the latter stripped herself of all of her property, and became insolvent and unable to respond to any judgment which the plaintiffs might recover against her. On the trial of the claim, the foregoing facts appearing, the court directed a verdict for the claimant. The plaintiffs moved for a new trial upon the general grounds, and upon the ground that under the pleadings and the evidence a verdict was demanded in their favor, and a verdict was not authorized in favor of claimant. The court overruled the motion, and the plaintiffs excepted.

Is the doctrine of lis pendens applicable under the facts of this case? As the litigation between the plaintiffs and their mother was pending at the time the mother executed to Law and Steebles, as trustees for the Penn Mutual Life Insurance Company, her deed to secure the loan of $6,000 from that company, plaintiffs contend that the lien of the judgment which they obtained against their mother is superior to said security deed. On the contrary the holder of the security deed contends that the suit between the plaintiffs and their mother, when fairly construed, was one seeking only a general judgment against the mother, and that when such judgment was obtained it was inferior to the title of the lender to these lots under such security deed. Counsel for the holder of the security deed contend, that, to make the doctrine of lis pendens applicable, the suit must be one for the recovery of the possession of property, or the enforcement of a lien against it, or one for the adjudication between conflicting claims of title thereto, or some judicial action directly affecting the title, possession, or right of possession of specific property; that it is not sufficient that the title or right to property may be incidentally affected by the recovery of a money judgment under which the property of the defendant therein may be sold and his title divested; that the plaintiffs have no claim or right superior to that of any other creditor of their mother; and that all they have is the lien of a money judgment obtained subsequently to the execution of the security deed, which could not relate back to the date of the filing of their suit.

All judgments obtained in the courts of this State bind all the property of the defendant from the date of such judgment, unless otherwise provided. Civil Code (1910), § 5946. Judgments bind

all property which the defendants therein may have conveyed away, prior to the rendition of the judgment, with the intention to delay, hinder, or defraud creditors, where such intention is known to the party taking it. 3224(2). This is so for the reason that such conveyances are declared void, and the title to property so conveyed remains in the judgment debtors subject to judgments subsequently obtained. It is true that "Decrees ordinarily bind only parties and their privies only from their rendition." To this general rule there is an exception, which is that "a pending suit is a general notice of an equity or claim to all the world from the time the petition is filed and docketed; and if the same is duly prosecuted, and is not collusive, one who purchases pending the suit is affected by the decree rendered therein." § 4533. Lis pendens is the jurisdiction, power, or control which courts acquire over property involved in a suit, pending the continuance of the action, and until the final judgment therein. *Tinsley* v. *Rice,* 105 *Ga.* 285, 288 (31 S. E. 174). The rule of lis pendens applies to a creditor's suit to set aside a fraudulent conveyance made to defeat his creditor, so that the purchasers or other persons, acquiring interests pendente lite, take title subject to the decree in the suit. 38 C. J. 20 (§ 20), D; *Edwards* v. *Banksmith,* 35 *Ga.* 213 (2). Actions to reach property which has been fraudulently conveyed, and suits to subject specific property to the payment of debts, come within the doctrine of lis pendens. 17 R. C. L. 1025, § 22; Scott v. McMillen, 1 Litt. (Ky.) 302, 311 (13 Am. D. 239). If this is so, we see no valid reason why the doctrine of lis pendens would not apply to a suit brought by a creditor to prevent his debtor from conveying his property away with the fraudulent intent to hinder, delay, or defraud the creditor. On principle the doctrine of lis pendens should apply in both classes of suits. If, after the mischief to the creditor is accomplished by the execution of a fraudulent conveyance, a suit to set aside such fraudulent conveyance constitutes lis pendens, by parity of reasoning and upon principle the doctrine should apply to a suit brought to prevent the mischief, upon the theory that an ounce of prevention is worth a pound of cure.

A creditor, who during the life of his debtor brings suit to set aside a fraudulent conveyance or transfer made by the debtor, acquires a lien on the property conveyed by such conveyance or transfer, by the commencement of the suit in equity and service of proc-

ess. By many of the authorities such creditor becomes entitled to the payment of his claim in preference to other creditors, as a reward of. his diligence. 27 C. J. 859 (§ 828) b, note 88, and cit. In other jurisdictions, however, it is held that a junior judgment creditor acquires no priority over senior judgment creditors, or others having prior liens, by filing a bill to set aside a conveyance of property as fraudulent. Id. note 90, and cit. In this case it is unnecessary to decide which of these two rules is the correct one. Such lien will likewise prevail against the purchaser from the debtor or his grantee, pending the suit. Id. notes 94 and 95, and cit. On principle and upon sound reasoning, a creditor, who brings suit to prevent his debtor from carrying into effect a threat to convey away all his property for the purpose of defeating the claims of his creditors, acquires a lien upon the commencement of the suit to prevent such fraudulent conveyance and after service of process thereunder. Formerly a creditor without a lien, under ordinary conditions, could not first maintain an action to set aside a fraudulent conveyance of his debtor. *Haralson* v. *Newton,* 63 *Ga.* 163; *Comer* v. *Coates,* 69 *Ga.* 491; *Stephens* v. *Whitehead,* 75 *Ga.* 294; *Booth* v. *Mohr,* 122 *Ga.* 333 (50 S. E. 173). But, since the uniform procedure act of 1887 (Civil Code of 1910, § 5514), creditors in one suit may proceed for judgment on their debts and to set aside fraudulent conveyances made by their common debtor. *DeLacy* v. *Hurst,* 83 *Ga.* 223 (9 S. E. 1052); *Vaughn* v. *Ga. Co-op. Loan Co.,* 98 *Ga.* 288 (25 S. E. 441); *Booth* v. *Mohr,* supra.

It is true that whenever the debtor shall threaten or prepare to sell, convey, or conceal his property liable for the payment of his debts, for the purpose of avoiding payment of the same, the creditor can sue out a fraudulent debtor's attachment. Civil Code (1910), § 5088. In cases covered by this section the creditor has a complete remedy at law by attachment. *Haralson* v. *Newton, Comer* v. *Coates,* and *Stephens* v. *Whitehead,* supra; *Coates* v. *Allen,* 71 *Ga.* 787; *Manheim* v. *Claflin,* 81 *Ga.* 129 (7 S. E. 284). In this case, however, the plaintiffs were seeking to assert both equitable and legal rights. They were seeking to have set up and declared an implied trust, which is an equitable cause of action, and to prevent their mother from fraudulently disposing of her property so as to defeat their claim against her, for which latter purpose they had a remedy at law by applying to the superior court for the

issuance of a fraudulent debtor's attachment. This being so, the plaintiffs could embrace both causes of action in one suit under our uniform procedure statute. The suit of the plaintiffs was one directly affecting the title of the mother to land lots 5 and 6. Its purpose was to obtain a judgment against the mother for the value of the plaintiffs' interests in the land, which she held under an implied trust for them, and which she had wrongfully encumbered, in consequence of which the plaintiffs lost their interest in the trust property; and to procure a special judgment lien upon these two lots and a general lien upon all the mother's property. When the insurance company took its security deed from the mother to these lots, pending this suit, it took subject to the final decree in the case. The fact that the trial judge declined to grant plaintiffs an injunction to restrain their mother from encumbering these lots was not an adjudication that they were not entitled to the other relief which they sought. The refusal of the injunction could have rested upon the ground that injunction was not necessary to protect the rights of the plaintiffs, as the pendency of the suit was sufficient for that purpose. *Edwards* v. *Banksmith,* supra; *Smith* v. *Malcolm,* 48 *Ga.* 343; *Mathews* v. *Cody,* 60 *Ga.* 355; *Clay* v. *Clay,* 86 *Ga.* 359 (12 S. E. 1064).

Applying the principles above ruled, the court erred in directing a verdict for the claimant.

*Judgment reversed. All the Justices concur.*