## HATTON *et al.* v. JOHNSON *et al.*

1. The claim for equitable relief made by two of the petitioners in this case, in the nature of cancellation of a deed executed by them, on the ground that its execution had been procured by fraud, is not supported by the allegations of fact in the petition.
2. Under the alleged facts in this case the court properly refused to dismiss the entire petition.
3. It not appearing that the lessee company was insolvent and unable to respond in damages in any amount of recovery as mesne profits, there was no ground for the appointment of a receiver, although Hatton, the alleged cotenant who was receiving the mesne profits, was a non-resident. In the event of a recovery by the plaintiffs, the lessee would be responsible to them for their proportion of the rents of the place, at least their proportion of rents accrued since the institution of suit, whereby notice was given to the lessee of the claims of the plaintiffs. Nor was there necessity for the grant of the injunctive relief sought, as the rights of the plaintiffs would be protected

against any transfer of the property by Hatton, under the doctrine of lis pendens.

No. 1604.　MAY. 15, 1920.

Equitable petition. Before Judge Littlejohn. Sumter superior court. August 5, 1919.

J. L. Johnson, Judson Johnson, A. J. Johnson, Amos Johnson, Mrs. Amie Davis (born Brooks), Mrs. Mamie Griffin (born Brooks), and Thomas L. Thigpen, a minor suing by his guardian, brought their equitable petition against R. D. Hatton and the Republic Mining and Manufacturing Company (sometimes hereinafter referred to as the Mining Company), a corporation under the laws of Georgia and having an office and place of business in the county of Sumter, in the superior court of which county the petition was filed. Petitioners seek equitable relief and the recovery of lot of land No. 214, in a designated district of said county. It is alleged that Hatton is in possession of the land, claiming sole and exclusive ownership of the same to the entire exclusion of petitioners, who claim title thereto. It appears from the petition that both Hatton and the plaintiffs claim under one Joshua Thigpen, but the Mining Company has a lease from Hatton of the whole lot for the purpose of mining bauxite ore. The lease is dated January 2, 1917; the ore is being removed under said lease by the lessee company and carried beyond the limits of the State; and the company is paying Hatton, as the purchase-price under the lease, about $8,000 a month. Hatton is a non-resident and is placing the money received beyond the limits of the State. The chief value of the land consists in the bauxite ore; and it is alleged that plaintiffs will be irreparably injured by the acts of the defendants, unless the court grants the equitable relief sought. Plaintiffs express a willingness that the lease made to the Mining Company be allowed to stand, but claim that the money should be impounded in the hands of a receiver and Hatton be required to account for the money paid him, as plaintiffs are unable to ascertain the amount thereof. Joshua Thigpen died in December, 1864, intestate, seized and possessed of the land, and leaving no debts. His wife died in 1873. It is alleged, that the title passed into their four children, to wit, J. L. Thigpen and A. N. Thigpen, sons, and Mrs. F. C. Brooks and Mrs. J. T. Johnson, daughters; that there never was any partition or di-

vision in kind of the lot between these heirs; that the petitioners, J. L. Johnson, Judson Johnson, A. J. Johnson, and Amos Johnson, sometimes referred to as the Josephine Johnson heirs, have title to a five-sixteenths undivided interest in the whole lot, or a five-sixty-fourths undivided interest each. There are appropriate allegations to show how the title to this interest is derived. Thomas L. Thigpen holds title to a one-twenty-fifth undivided interest. Mrs. Mamie Griffin (born Brooks) and Mrs. Amie Davis (born Brooks) have title to a five-sixteenths undivided interest in said land; and the petition contains allegations tracing the title to this interest from Joshua Thigpen to Mrs. Griffin and Mrs. Davis. In support of the claims of Mrs. Griffin and Mrs. Davis it is shown that subsequently to their father's death, and before they had arrived at their majority, their guardian, H. D. Watts, on July 3, 1903, sold, subject to their ratification upon their arrival at majority, their interest in the lot of land so descending to them from their father's estate (administration on his estate having been already had and dismissed) for the sum of one hundred dollars; the land at the time of the sale being considered worthless except for the value of some timber thereon. The ratification of this sale was to be evidenced by a deed to the land upon the arrival of the two parties last named at their majority and their acceptance of the purchase-price, one hundred dollars. At the time of the contract between Watts, the guardian, and P. L. Holt, the purchaser from Watts, Mrs. F. C. Brooks was in life. Before Mrs. Griffin and Mrs. Davis had arrived at their majority Holt had consumed and used the timber on the land, but failed to request a deed from Mrs. Griffin and Mrs. Davis until November 11, 1912, after he had discovered, it is alleged, the great value of the land for mining purposes, which value for this purpose was unknown to Mrs. Griffin and Mrs. Davis. On November 11, 1912, upon the request of P. L. Holt, Mrs. Griffin and Mrs. Davis executed their quitclaim deed to the south half of the lot to Mrs. Holt, the wife of P. L. Holt. At the time of the execution of this deed they were in ignorance of the state of the title to this lot of land. The defendant Hatton, knowing the great value of the land for mining purposes, had, prior thereto, procured of Mrs. Holt and P. L. Holt an option to buy the same, together with other lands. Hatton, having ascertained the fact

that Mrs. Griffin and Mrs. Davis by the death of their grand-mother, Mrs. Brooks, inherited a one-fourth undivided interest in the whole lot of land and an additional one-fourth undivided interest in the northwestern corner of the lot, and knowing that Mrs. Griffin and Mrs. Davis were totally ignorant of their right and title therein so descending to them from their said grand-mother's estate, and with the intent to defraud them out of their right and title so descending to them, approached Mrs. Griffin and Mrs. Davis, and, concealing the fact from them of their rights and title in the land and the great value of the land, represented to them that there had been a mistake in the description con-tained in the deed that they had previously executed to Mrs. Ella R. Holt on November 11, 1912, and requested that they cor-rect said deed by executing another that he had prepared and had ready for their signature at the time, and represented that it was solely for the purpose of making this correction, the deed itself reciting that it was for the purpose of making a correction in said former deed, he knowing that the former deed executed by Mrs. Griffin and Mrs. Davis to Mrs. Holt was not incorrect and contained no inaccuracies; and thus he fraudulently procured them to execute to him a conveyance of their interest in the lot of land. This deed was not read to the grantors, as they relied on his statement that it was executed for the purpose of correct-ing the description in the former deed. It is also alleged that the defendant Hatton claims title and ownership of all the several interests in the said lot of land, but that he has no lawful claim to them. He had procured conveyances from "some of the heirs of the said Joshua Thigpen, purporting to convey or quit-claim the entire lot and all interests therein; but it is shown that such conveyances are of no effect as against the interests of peti-tioners herein, because the makers of such conveyances had no such title nor authority to convey, but only to convey fractional undivided interest in said lands formerly owned by heirs who are not petitioners herein, and not in conflict with petitioners' rights." The petitioners pray, among other things, for injunction against Hatton, to prevent his selling or encumbering the land or any part thereof; for an accounting by Hatton; for the appointment of a receiver to hold the rents which are now being paid by the Mining Company to Hatton; that they be allowed to recover

their interest in the land; that commissioners be appointed to partition the same; that they recover of Hatton their interest in the mesne profits; that the Mining Company be enjoined from paying Hatton any of the proceeds of the mining done on the land; that the deed executed by Mrs. Griffin and Mrs. Davis to Hatton be decreed to be void and cancelled. The defendants filed general and special demurrers, urging in the general demurrer that there is no equity in the petition. The court overruled the general demurrer; whereupon the defendants excepted.

*Hal Lawson, M. B. Cannon, W. W. Dykes,* and *Ross & Ross,* for plaintiffs in error.

*Eldridge Cutts* and *Hixon & Pace,* contra.

BECK, P. J. (After stating the foregoing facts.)

1. We will first examine the claim of Mrs. Griffin and Mrs. Davis, that they are entitled to the equitable relief sought by them in this petition. Their right to equitable relief rests upon the alleged ignorance of their rights to the interest which they now claim in the property and the value of the land for mining purposes; and upon the allegations of fact that they executed the deed to Hatton, which they now seek to have cancelled, in ignorance of their rights and in ignorance of the value of the land, especially of the minerals contained therein; that Hatton knew the value of the minerals; that he did not reveal the fact to them; and moreover that the deed was executed solely for the purpose of correcting a mistake in a former deed; that Hatton so represented it, and the deed recited it. They contend, that, the facts considered, it should be adjudged that Hatton had procured the deed from them by practicing fraud upon them and making fraudulent representations, and that the deed should be adjudged void. After a careful examination of all the allegations, we fail to discover that these two complainants are clothed with such an equity and occupy such a favored position in a court exercising equitable jurisdiction that they are entitled to the drastic relief here sought,— relief which goes to the extent of having a court of equity lay its strong hand upon a deed which they had executed after they had attained their majority, after they had had years in which to investigate and ascertain their exact interest in the property in question, and to investigate and ascertain the value of the land. The fail-

ure of Hatton to communicate to these grantors his knowledge of the value of the bauxite ore, the quantity of this ore upon the land, its location in the various parts of the lot, did not amount to a fraud. There was no confidential relation existing between Hatton and these two vendors. It is not alleged that he made any statement in regard to the value of the property which misled them. In a case "where the seller was ignorant of the value of the property and the purchaser knew that she knew nothing about it, and the seller asked the purchaser the value of the property and relied upon his statement, which was greatly below the value, the sale was set aside on the ground that it was not a mere purchaser's assessment, but a deliberate statement made to her by a person having full knowledge, which statement was asked by her for guidance and was acted on by her in reliance on its good faith and accuracy." Kerr on Fraud, 53. But there is no allegation in this petition that the vendors sought information of Hatton as to the value of the property, nor that he made any statement to them that was misleading in regard to such value. "Where two parties, in the absence of a fiduciary relationship, are treating for an estate, and the purchaser has actual knowledge of a mine upon the land, the purchaser is not bound to disclose that fact to the other; for the means of information on the subject are accessible to the other as well as to the purchaser." Smith on Fraud, 36. In the case of Mitchell v. McDougall, 62 Ill. 498, it was said: "The undue concealment, which amounts to a fraud, for which a court of equity will grant relief, is the non-disclosure of those facts and circumstances which one party is under some legal or equitable obligation to communicate to the other, and which the latter has a right, not merely in foro conscientiæ but juris et de jure, to know. Under such circumstances the concealment of an important fact would be improper and unjust; it would be an undue concealment on account of the fiduciary relation existing; but where the parties, in the absence of any such relation, are treating for an estate, and the purchaser knows from surface indications, or otherwise, there is a valuable mine upon the land, he is not bound to disclose that fact to the owner; for the means of information on the subject are as accessible to the one as to the other. The concealment of facts of which the other is ignorant must be by a party who is under some special obligation,

by confidence reposed, or otherwise, to communicate them truly and fairly, to justify a court of equity in taking cognizance." In Fox *v.* Mackreth, 2 Brown's Ch. R. 400, Lord Chancellor Thurlow, in delivering the opinion in the case where undue concealment of an important fact was charged, said: "The doubt I have is, whether this case affords facts from which principles arise to set aside this transaction, which will not, by necessary implication, draw other cases into hazard. And, without insisting upon technical morality, I don't agree with those who say, that where an advantage has been taken in a contract, which a man of delicacy would not have taken, it must be set aside. Suppose, for instance, that A, knowing there to be a mine in the estate of B, of which he knew B was ignorant, should enter into a contract to purchase the estate of B for the price of the estate without considering the mine, could the court set it aside? Why not, since B was not apprised of the mine and A was? Because B, as the buyer, was not obliged, from the nature of the contract, to make the discovery. It is therefore essentially necessary, in order to set aside the transaction, not only that a great advantage should be taken, but it must arise from some obligation in the party to make the discovery." And this doctrine was approved by Lord Eldon, in Turner *v.* Harvey, Jacob's R. 178. In the case of Harris *v.* Tyson, 24 Pa. 347 (64 Am. D. 661), the Supreme Court held, in a case which is closely in point here, that "A person who knows that there is a mine on the land of another, of which the latter is ignorant, may nevertheless buy it. The ignorance of the vendor does not of itself render the transaction fraudulent on the part of the purchaser." In the course of the opinion it was said: "The tract in dispute owes its value to the presence of sand chrome. Irrespective of this it is nearly worthless; but as a depository of that mineral it is worth a large sum of money. Leave to dig and carry it away is therefore a highly valuable privilege. Of this the plaintiff was ignorant, though he had some knowledge of the worth of rock chrome. But Tyson was aware of it before he procured a cession of the right to mine on the plaintiff's land. Yet this, during the negotiation, he concealed from the plaintiff. Under the circumstances in which the parties stood, is not this such an instance of suppressio veri as will affect the contract? Constructive fraud is

where a party knows the truth and conceals it: Pearson *v.* Morgan, 2 Bro. Ch. 390. As a general rule, each party is bound in every case to communicate to the other his knowledge of material facts, provided he knows the other to be ignorant of them, and they be not open and naked or equally within the reach of his observation: 2 Kent's Com. 4th ed. 482 & n. This is consonant with the principle of the civil law, though subject to some qualification in our courts, where the rule seems to be that to constitute undue concealment there must be a suppression of facts, which one party is bound in conscience and duty to disclose to the other: 1 Story's Eq. §§ 207, 208. This occurs wherever the circumstances are such as to attract the confidence of the ignorant party: 1 Madd. Ch. 265-6. There are various instances of this kind in reported cases: State *v.* Holloway, 8 Blackf. 45-7; Draper *v.* Bolare, 2 Vern. 370; Ibbottson *v.* Rhodes, 2 Vern. 584; 2 Hov. on Frauds, 197; Hudson *v.* Chancey, 2 Vern. 370. The principle has been asserted even in law: 1 Stark. R. 352, Gray *v.* Hall; also in Morgan *v.* Morgan, 1 Brod. & Bing. R. 289, a very strong case." In a note to the case of Crompton *v.* Beedle, Ann. Cas. 1912A, 407, it is said: "It has been held that where parties deal at arm's length and there is no fiduciary relation between them, mere silence on the part of the purchaser, or the failure to disclose knowledge on his part of peculiar value belonging to the property sold, will not be sufficient to set aside a sale fairly made and which is otherwise unimpeachable;" and the case of Pennybacker *v.* Laidley, 33 W. Va. 624 (11 S. E. 39), is cited as supporting this doctrine. In Bowman *v.* Bates, 2 Bibb, 47 (4 Am. D. 677), it was held that the suppression of knowledge that land is more valuable because water thereon contains salt, which the vendor living at a distance does not know, is sufficient to warrant the canceling of a deed obtained by the purchaser where the latter prevented the vendor's agent from giving information thereof. This case last cited may be distinguished by the statement that the vendor lived at a distance from the property, and that the purchaser, having discovered the salt-water, prevented the agent of vendor from communicating to his principal information of this fact. See note to the case of Crompton *v.* Beedle, supra, and the authorities there cited.

Nor did Hatton's statement that he desired to have these two

parties plaintiff execute to him a deed which would correct a mistake in a former deed show fraud. The former deed might, in one sense of the word, be regarded as containing a mistake, in that it did not convey the exact interest of the parties executing the conveyance, though there were no inaccuracies as to the description of the land by metes and bounds. If Mrs. Davis and Mrs. Griffin did not read the deed, they offer no excuse for that. It is not alleged that they could not read. To declare this deed void on such allegations of fraud would endanger a large percentage of executed contracts by which title has been divested and vested in this State. Under the allegations of this petition Hatton had an incontestable right and title to the interests of Mrs. Griffin and Mrs. Davis in the lot of land in question.

2. The claim of Mrs. Griffin and Mrs. Davis to the relief sought by them upon equitable grounds having been eliminated from the case by the ruling which we have made above, we pass to the question as to whether or not a court of equity should retain jurisdiction of this case for the purpose of partitioning these lands between the other plaintiffs and the defendant Hatton; and the decision of this question depends upon whether, upon its being shown that one cotenant is in exclusive possession of land and denies the title of others claiming to be cotenants with him, excluding them from possession and from participation in the profits of the land, the tenants in common thus excluded can maintain an equitable suit for the establishment of their rights as tenants in common to have the land partitioned; or does such a situation present merely an issue to be determined in a court of law? It is provided in the Civil Code, § 5358, relating to proceedings to partition, that "In all cases where two or more persons are common owners of lands and tenements in this State, whether by descent, purchase, or otherwise, and no provision is made, by will or otherwise, as to how such lands and tenements are to be divided, any one of such common owners may apply to the superior court of the county in which such lands and tenements are situated, at term time, or the judges thereof at chambers, for a writ of partition, which application shall be by petition, setting forth plainly and distinctly the facts and circumstances of the case, describing the premises to be partitioned, and defining the share and interest of each of the parties therein." And it has been held that these

statutory proceedings partake of the nature of proceedings in equity. See *Hamby* v. *Calhoun,* 83 *Ga.* 317 (9 S. E. 831). But in section 5355, which also relates to the subject of partition, it is expressly declared that "Equity has jurisdiction in cases of partition, whenever the remedy at law is insufficient, or peculiar circumstances render the proceeding in equity more suitable and just." And a consideration of the complicated facts of this case leads to the conclusion that this is one of the cases where there exist the peculiar circumstances rendering the proceedings in equity more suitable, just, and complete. In paragraph 12 of the petition it is alleged: "That said defendant, Richard D. Hatton, claims title and ownership of all the several interests in said lot of land; but, it is shown and submitted, he had no lawful claim to the several interests herein sued for. Said Richard D. Hatton has procured conveyances from some of the heirs of the said Joshua M. Thigpen, purporting to convey, or quitclaim, the entire lot and all interests therein; but it is shown that such con veyances are of no effect as against the interests of petitioners herein, because the makers of such conveyances had no such title nor authority to convey, but only to convey fractional undivided interest in said lands formerly owned by heirs who are not petitioners herein and not in conflict with petitioner's rights." The allegations of this paragraph may not afford all the information upon the subject of the conveyances referred to from "some of the heirs of the said Joshua M. Thigpen," purporting to convey or quitclaim the entire lot and all interest therein, that the rules of good pleading entitle a defendant to have; but the defendant in this case did not by appropriate special demurrers call for more light or fuller information on the subject of these deeds. From the allegations of paragraph 12 it appears, then, that the defendant Hatton is in possession of the lands under deeds which purport to convey the entire interest therein, but which could only convey fractional undivided interests in the lands. Nevertheless these deeds are not void. It has been held by this and other courts that a deed by one tenant in common, conveying a part of the land by metes and bounds which is owned by several tenants in common, is not void. It was said in the case of *Lane* v. *Malcolm,* 141 *Ga.* 424 (81 S. E. 125): "The conveyance by a tenant in common of a portion of the common estate by metes

and bounds will be given effect as against the grantor and his privies, so far as it may be done consistently with the preservation of the full rights of the other tenants in common." And it would seem, inasmuch as Hatton or his lessee had opened up mines upon parts of the land and had installed the necessary machinery, that the ascertainment or determination of the part in severalty of the lot of land which should be allotted to Hatton would fall peculiarly within the jurisdiction of a court of equity for the purpose of giving to him that which he is equitably entitled to under his purchase, consistently with the preservation of the full rights of the other tenants in common. Consequently the court of equity properly retained jurisdiction of the case, notwithstanding the elimination of the two plaintiffs referred to in the first part of this decision. We have not overlooked the large number of decisions from other courts cited in the brief of counsel for the plaintiffs in error, holding generally that where one tenant in common ousts the others, the latter should first recover by ejectment or other proceedings at law before they could maintain proceedings for a partition. But even if the general rule there stated prevails in this State ordinarily, we think the peculiar circumstances pointed out under the provisions in section 5355 of the Civil Code should be given application here.

3. It not appearing that the lessee company was insolvent and unable to respond in damages in any amount of recovery as mesne profits, there was no ground for the appointment of a receiver, although Hatton, the alleged cotenant who was receiving the mesne profits, was a non-resident. In the event of a recovery by the plaintiffs, the lessee would be responsible to them for their proportion of the rents of the place, at least for their proportion of the rents accruing since the institution of suit, whereby notice was given to the lessee of the claims of the plaintiffs. Nor was there necessity for the grant of the injunctive relief sought, as the rights of the plaintiffs would be protected against any transfer of the property by Hatton, under the doctrine of lis pendens.

*Judgment reversed in part and affirmed in part. All the Justices concur.*