INGRAM & LeGRAND LUMBER CO. *v.* McALLISTER *et al.*

No. 12762. September 14, 1939.

*R. S. Wimberly,* for plaintiff.

*T. B. Rainey* and *John C. Bult,* for defendants.

Reid, Chief Justice. This writ of error presents exceptions to the refusal of an interlocutory injunction. The case is substantially as follows: In 1912 J. F. Duke purchased a tract of land in Marion County, which included by description land lot number 221. In 1916 T. W. McAllister purchased a tract of land situated on the west and north of the tract purchased by Duke, which included by description land lot number 220, which lot lay parallel to and west of land lot 221. In 1935 Ingram & LeGrand Lumber Company, the plaintiff, purchased from McAllister certain standing timber described in part as all of the timber on land lot 220. It is the contention of the plaintiff that it was the intention of McAllister to sell and plaintiff's intention to purchase the timber on certain land which the parties by mutual mistake thought was a part of land lot 220, but which in fact constitutes part of land lot 221 lying north of a certain fence erected thereon by Duke. In this connection it is alleged that in making said sale McAllister, who is now deceased, had his son Jack McAllister point out the timber to the plaintiff and go over the land with plaintiff's representatives, and that he pointed out to plaintiff on lot number 221 north of said fence "as a part of the timber which McAllister was offering to sell and your petitioner proposing to buy; that it was the purpose and intention of said McAllister to sell all the pine timber that he had, and this was the understanding of both parties; that your petitioner took into consideration the timber on the north part of this lot 221 when it agreed on the price it would pay for said timber, and would not have made the offer and contract it did, with this timber left out."

It is the further contention of plaintiff that the fence above

referred to, which was erected by Duke shortly after he purchased the land, was erected by him as the dividing line between the two tracts of land. This fence extends across land lot 221 running in a southwesterly direction, and across the southeast corner of lot 220, "thus taking for himself part of lot 220, which belonged to the Miller place (the property purchased by McAllister), and leaving to said Miller place a part of 221 which belonged to him, thus in effect swapping the north part of 221 for the south part of 220;" that McAllister thereafter recognized the above-mentioned fence as the boundary line between his land and the land belonging to Duke," and permitted said Duke to cultivate a part of the part of said lot 220 south of said fence as his own land, and to cut the timber from the timbered part of said south part of 220, while on the other hand said Duke cut the timber on lot 221 only on that part of the same south of said fence, and allowed the said McAllister to sell and have cut the timber on that part of 221 north of said fence;" that McAllister sold the pine timber on said tract to Alexander & Burgin in 1922, and had the timber cut to said fence on both 220 and 221, and sold the hardwood on said land in 1936 and had it cut to said fence; that after the execution of the lease by T. W. McAllister to plaintiff and after the death of T. W. McAllister, Wesley McAllister, a son of one of the heirs of T. W. McAllister, "went to the said Duke and told him that he had discovered that the fence above referred to did not run on the line between the two properties as called for by the deeds, that the north part of 221 according to the deeds belonged to Duke and the south part of 220 to the McAllisters, and that as Duke had been cultivating this south part of 220 and cutting the timber from it, he thought he ought to give to him, McAllister, a timber lease on the timber on the part of 221 north of the fence for the nominal sum of $1.00;" that Duke accordingly executed to Wesley McAllister a timber lease to said property and for said consideration; "that in equity and good conscience said timber on said north part of lot 221 belongs to your petitioner, and said Wesley McAllister is holding the same as trustee for your petitioner, but he refuses to turn over the same to petitioner without the payment of a large sum of money, and is threatening to sell it to other parties unless petitioner will pay such sum to him for it; that the timber lease conveying the timber on said tract of land to petitioner fails

to describe this timber by a common mistake and inadvertence and mutual oversight in checking the description in the documents against the survey of the land, it being the purpose of both parties that all pine timber owned by T. W. McAllister should pass under this lease, and said timber on the north part of 221 really belongs to him."

This action was brought against J. F. Duke, Wesley McAllister, Julius McAllister, and Jack McAllister, it being alleged that the three parties last named are heirs of T. W. McAllister, and through inheritance and purchase from other heirs have succeeded to all the title, right, and interest in and to the property of T. W. McAllister. The prayers are: "1. That petitioner's said lease be reformed so as to include in the description of the land from which the timber is sold the part of lot 221 north of the fence, and said timber be decreed to [be?] the property of petitioner. 2. That said defendant Wesley McAllister be required to convey the timber on said part of lot 221 to petitioner or to transfer to petitioner his lease to the same upon payment by petitioner of said sum of one dollar, which petitioner herewith tenders to him. 3. That said defendant Wesley McAllister, be restrained and enjoined from selling or encumbering the timber on said part of lot 221, or from transferring his lease thereto to any other person. 4. That petitioner have such other and further relief as to the court seem meet and proper."

Wesley McAllister filed an answer in material part as follows: "This defendant admits that he knew all of lot 221 belonged to Duke, and that he had known this to be the truth for more than 20 years, and that the said wire fence erected by Duke on said land was not on the land line, and that the same had never been considered to be the land line between himself, his father, T. W. McAllister, and Duke. For further plea and answer in his behalf this defendant says that on the 14th day of November, 1938, for a valuable consideration he leased from J. F. Duke all the merchantable pine timber on 99 acres, more or less, off the north side of lot of land 221 in the 32th district of Marion County, State of Georgia, as will appear in deed book 32, page 163, records in the clerk's office Marion superior court. And for further plea and answer this defendant says that for the past 30 years and more the said J. F. Duke and his predecessor in title E. H. Hughes have

respectively been in the open, notorious, adverse, public, continuous, exclusive, uninterrupted, and peaceable possession in their own right, in good faith, of said lands." Duke's answer was in material part as follows: "This defendant admits that he erected a fence on said lands, . . but denies that he endeavored to erect such fence on the lines that divided his lands from the lands of McAllister; further denies that said fence was to have been the dividing line between his land and the lands of McAllister, and denies that there was ever any agreement between this defendant and McAllister or any one else that such fence was to be the dividing line between lands of defendant and lands of McAllister. Further, this defendant denies that there was ever any swap or agreement for a swap of the lands north of the fence on lot 221 for lands south of the fence on lot 220, as in said paragraph of said petition alleged. Further answering the allegations that the timber on the north part of lot 221 was cut by Alexander & Burgin Lumber Company in 1922, this defendant says that while it is true that Alexander & Burgin Lumber Company cut the timber of said lot 221, same was cut under and by virtue of a timber lease from this defendant to Alexander & Burgin Lumber Company, dated March 2, 1922, . . in which lease all the timber on said lot 221 was conveyed by this defendant together with the pine timber on the other lands of the defendant as described in paragraph 3 of the answer. . . Further answering said petition, this defendant says, that he at the time of erecting the fence on his lands as in said petition set out, that same was not done with the view of placing said fence on the line dividing his land from the lands of the adjoining landowner; that such fence has never been recognized by him and the adjoining landowners as the line between their respective lands; that there has never been any agreement between he and the adjoining landowners that such fence was to be the line between their respective lands and that this defendant to have the lands south of said fence and the adjoining landowner on the north to have all the land north of said fence; that he does bona fide and verily claim title and possession to all of said lot of land No. 221 under and by virtue of said deed herein before referred to; that he claims none of lot 220 adjoining said lands; nor does he claim any land to which he does not hold title to, but does claim title and possession to all of lot number 221 described in said petition;

and that he executed a timber lease to all the merchantable saw timber north of the fence on said lot to Wesley McAllister as in petition alleged, and that the title to said timber by virtue of said lease is in said Wesley McAllister but the title and possession of the land embraced in said lot 221 is in this defendant."

On interlocutory hearing the plaintiff submitted affidavits in support of the allegations of the petition, and the defendants submitted affidavits in support of their answers.

The judge did not err in refusing to grant an injunction. It is not necessary that we pass upon the merits of the plaintiff's claim to the timber, nor do we pass upon the sufficiency of the evidence to authorize the final relief sought. Injunction is a harsh remedy, and our constitution and laws invest the judges of the superior courts of this State with a broad discretion in granting or refusing the relief afforded by it, according to the circumstances of each case presented for their consideration (*Cubbedge* v. *Adams,* 42 *Ga.* 124) ; and such a judgment will not be reversed by this court unless it clearly appears that the judge has abused this discretion. As a general rule, where the evidence on material issues is conflicting, a judgment denying an interlocutory injunction will not be disturbed by this court. *Gewinner* v. *McCrary,* 99 *Ga.* 299 (25 S. E. 648) ; *Gammage* v. *Powell,* 101 *Ga.* 540 (28 S. E. 969) ; *Hendrix* v. *Hunt,* 168 *Ga.* 81 (146 S. E. 897). In the present case, besides there being a decided conflict in the evidence, and especially on the question whether the fence erected by Duke constituted the true line between his lands and the lands of T. W. McAllister, by reason of the acquiescence of said owners therein for seven years by acts and declarations (Code, § 85-1602; *Cleveland* v. *Treadwell,* 68 *Ga.* 835; *Camp* v. *Cochrane,* 71 *Ga.* 865; *Glover* v. *Wright,* 82 *Ga.* 114, 8 S. E. 452), or by virtue of a parol agreement between the adjoining landowners establishing the line, which agreement was accompanied by possession or was otherwise duly executed (*Farr* v. *Woolfolk,* 118 *Ga.* 277, 45 S. E. 230; *Matlox* v. *DeLoach,* 32 *Ga. App.* 454 (123 S. E. 624) ; *Clark* v. *Hulsey,* 54 *Ga.* 608; *Osteen* v. *Wynn,* 131 *Ga.* 209, 52 S. E. 37, 127 Am. St. R. 212; *Bennett* v. *Swafford,* 146 *Ga.* 473, 91 S. E. 553), it does not appear that there is any real necessity for the injunction sought. "Decrees ordinarily bind only parties and their privies; but a pending suit shall be a general notice of an equity

or claim to all the world from the time the petition shall be filed and docketed; and if the same shall be duly prosecuted and shall not be collusive, one who purchases pending the suit shall be affected by the decree rendered therein." Code, § 37-117. The general rule is that lis pendens, duly prosecuted, and not collusive, is notice to purchaser so as to affect and bind his interest by the decree. *Edwards* v. *Banksmith,* 35 *Ga.* 213; *Carmichael* v. *Foster,* 69 *Ga.* 372; *Weems* v. *Harrold,* 75 *Ga.* 866; *Clark* v. *Empire Lumber Co.,* 87 *Ga.* 742 (13 S. E. 826); *Bridger* v. *Exchange Bank,* 126 *Ga.* 821 (56 S. E. 97, 8 L. R. A. (N. S.) 463, 115 Am. St. R. 118); *Walker* v. *Houston,* 176 *Ga.* 878 (169 S. E. 107); *Jinks* v. *Lewis,* 94 *Ga.* 677 (20 S. E. 6). "To the existence of a valid and effective lis pendens it is essential that three elements be present; that is, three material facts must concur: the property must be of a character to be subject to the rule; the court must have jurisdiction both of the person and the subject-matter; and the property involved must be sufficiently described in the pleadings." *Moody* v. *Millen,* 103 *Ga.* 452 (30 S. E. 258). In the present case the property involved is real estate (Code, § 85-201), and it appears that the court has jurisdiction of the subject-matter and of the parties. The description of the property is sufficiently definite, so that one reading it can learn thereby what property is intended to be made the subject of the litigation. Accordingly, it appears to us that, whatever may be the rights of the plaintiff in and to the property in question, a decree in the present case establishing its right thereto would prevail over the rights of any person who may purchase the same from the defendant, Wesley McAllister, against whom the injunction is sought. While special circumstances may alter the rule, it is the general rule that where the rights of the plaintiff to the property in question are secured under the rule of lis pendens, the judge in the exercise of his discretion may refuse an interlocutory injunction. *Hatton* v. *Johnson,* 150 *Ga.* 218 (103 S. E. 233); *Clay* v. *Clay,* 86 *Ga.* 359 (12 S. E. 1064); *Empire Loan & Building Association* v. *Atlanta,* 77 *Ga.* 496; *Williams* v. *Harris,* 95 *Ga.* 453 (22 S. E. 682); *Smith* v. *Malcolm,* 48 *Ga.* 343; *Mathews* v. *Cody,* 60 *Ga.* 355.

For the above-stated reasons the judgment refusing an interlocutory injunction is          *Affirmed. All the Justices concur.*