In re David A. **BURKETT** and Cathy M. **Burkett,** Debtors.

**Manufacturers and Traders Trust Company, Movant,**

v.

**James R. Walsh, Trustee, Respondent.**

**James R. Walsh, Trustee, Plaintiff,**

v.

**Manufacturers and Traders Trust Company, Successor In Interest To Keystone Financial Bank, N.A., Defendant.**

Bankruptcy No. 02–28784–BM.
Adversary No. 02–2779–BM.

United States Bankruptcy Court,
W.D. Pennsylvania.

July 24, 2003.

---

James R. Walsh, Johnstown, PA, Chapter 7 Trustee.

Jill L. Locnikar, Pittsburgh, PA, for Manufacturers and Traders Trust Company.

### MEMORANDUM OPINION

BERNARD MARKOVITZ, Bankruptcy Judge.

Two matters are before the court at this time.

The chapter 7 trustee in the above bankruptcy case has brought a preference action against Manufacturers and Traders Trust Company ("M & T") pursuant to § 547(b) of the Bankruptcy Code. He seeks to avoid and to recover from M & T

for the benefit of the bankruptcy estate a mortgage against debtors' farm which was "reinstated" by court order only eight days prior to commencement of this bankruptcy case.

M & T counters that the court order did not give rise to a transfer of debtors' interest in the property for purposes of § 547(b). It further asserts that, even if the mortgage is avoidable as a preference, it also holds three other enforceable mortgages against the property which are not avoidable.

M & T has brought a motion for relief from the automatic stay so that it may continue a mortgage foreclosure proceeding against the property which was automatically stayed when debtors commenced this bankruptcy case.

The chapter 7 trustee asserts that the motion should be denied because there is equity in the property due to his avoidance of the mortgage upon which M & T relied in its mortgage foreclosure action.

We conclude for reasons set forth below that judgment must be entered in favor of M & T with respect to the chapter 7 trustee's preference avoidance action. In addition, we conclude that M & T is entitled to relief from the automatic stay to continue its mortgage foreclosure action in state court.

— FACTS —

Debtors formerly operated a farm in Imler, Pennsylvania, on which they raised veal calves for sale to meat processors. Their personal residence is located on the farm.

M & T is the successor-in-interest to Mid–State Bank & Trust Company ("Mid–State").

On August 16, 1993, debtors executed and delivered a promissory note in favor of Mid–State in the principal amount of $110,000 ("note 1") along with a mortgage against the farm in favor of Mid–State ("mortgage 1") to secure payment of the obligation. Mortgage 1 was duly recorded that same day.

On July 8, 1994, debtors executed and delivered a second promissory note in favor of Mid–State in the principal amount of $85,000 ("note 2") along with a second mortgage against the farm in favor of Mid–State ("mortgage 2") to secure payment of the obligation. Mortgage 2 was duly recorded that same day.

On November 9, 1994, debtors executed and delivered a third promissory note in favor of Mid–State in the principal amount of $110,000 ("note 3") along with a third mortgage against the farm in favor of Mid–State ("mortgage 3") to secure payment of the obligation. Mortgage 3 was duly recorded on November 22, 1994.

Each mortgage contained the following conspicuous language at the top of the first page: "THIS MORTGAGE SECURES FUTURE ADVANCES".

Each mortgage also contained the following provision:

THIS MORTGAGE ...IS GIVEN TO SECURE (1) PAYMENT OF THE INDEBTEDNESS AND (2) PERFORMANCE OF ALL OBLIGATIONS OF GRANTOR UNDER THIS MORTGAGE AND THE RELATED DOCUMENTS.

The term "indebtedness" was defined in relevant part in each mortgage as follows:

The word "indebtedness" means all principal and interest under the Note.... In addition to the Note, the word "indebtedness" includes all obligations, debts and liabilities plus interest thereon, of Grantor to Lender, ... whether now existing or hereafter arising, whether re-

lated or unrelated to the purpose of the Note. . . .

The term "related document" was defined in part in mortgage 1 as follows:

The words "Related Documents" mean and include without limitation all promissory notes, . . . mortgages, . . . and all other agreements and documents, whether now or hereafter existing, executed in connection with the indebtedness.

On March 8, 1996, on the eve of a scheduled sheriff's sale of their property initiated by Mid–State, debtors filed a voluntary joint chapter 11 petition ("first bankruptcy case"). Debtors brought an adversary action against Mid–State pursuant to § 506(a) of the Bankruptcy Code during the case to determine Mid–State's secured status. A default judgment was entered against Mid–State on August 12, 1996. The order declared that Mid–State's security interest totaled $155,450 and that the farm had a value of only $62,800.

At no time during their first bankruptcy case did debtors challenge or seek to avoid the liens arising from mortgages 1, 2 and 3. They remain of record to the present time.

In their plan of reorganization, debtors classified Mid–State as having an allowed secured claim in the amount of $155,450 and placed the remainder of its allowed claim in the class of general unsecured creditors. Debtors proposed paying the secured portion of Mid–State's claim in full over a period of twenty years with interest accruing at six percent *per annum*. They further proposed paying all general unsecured creditors five percent of their allowed claims in ten equal installments. Mid–State, the sole member of Class 1, voted against the proposed plan.

Mid–State experienced a change of heart at the hearing on plan confirmation, which was held on December 12, 1996, and voted in favor of the plan as the result of a compromise with debtors which resolved their various differences. The terms of the agreement were orally placed on the record at that time.

An order confirming debtors' plan of reorganization was entered that same day. The order noted that debtors and Mid–State had resolved their differences. They were directed to file motions to withdraw various other pending adversary actions against one another and to set forth the terms of their compromise in writing.

A consent order discontinuing with prejudice their pending adversary actions against one another was entered on December 31, 1996. The order further provided that the principal outstanding balance on the secured portion of Mid–State's claim would accrue interest at the rate of eight percent *per annum* instead of six percent *per annum*, commencing on the effective date of the plan and continuing until the secured claim was paid in full.

On March 31, 1998, debtors executed a promissory note dated October 15, 1997, in favor of Mid–State ("note 4") in the principal amount of $153,695.81, along with interest at the rate of eight percent *per annum*. Payment in 240 monthly installments was to commence on November 1, 1997. Note 4 was intended to evidence the agreement that had been struck at the hearing on plan confirmation concerning the treatment of the secured portion of Mid–State's claim.

Contemporaneously therewith, debtors also executed a mortgage dated October 15, 1997, against their farm in favor of Mid–State ("mortgage 4") to secure payment of this obligation. Mortgage 4 was duly recorded on May 8, 1998.

Debtors defaulted on their obligations set forth in note 4 starting in October of 2001. They remain in default to the present time.

Due to debtors' continuing default, M & T commenced a mortgage foreclosure action in state court on March 11, 2002. M & T alleged in the complaint that debtors had defaulted on their obligations as set forth in note 4 and sought to foreclose on their farm pursuant to mortgage 4. No mention was made of mortgages 1, 2 or 3 in the complaint.

On July 25, 2002, while the mortgage action was pending, M & T filed of record a satisfaction and release of mortgage 4. The recording was erroneous, as the obligation set forth in note 4 had not been paid in full.

On August 6, 2002, upon discovering its error, M & T filed a petition in the court where its mortgage foreclosure action was pending to strike and/or to revoke the erroneous recording of the satisfaction and release of mortgage 4. The state court issued an order the next day—i.e., on August 7, 2002—wherein it found that the satisfaction and release had been entered in error and that a debt was still outstanding. The decretal portion of the order provided as follows:

> The erroneous Satisfaction and Release recorded on July 25, 2002, satisfying the obligation of the Defendants on the record is hereby revoked and stricken as though the same had not been entered.

Neither debtors nor the chapter 7 trustee requested reconsideration of the order or appealed it.

Eight days later, on August 15, 2002, debtors filed a voluntary joint chapter 7 petition ("second bankruptcy case"). A chapter 7 trustee was appointed shortly thereafter. The schedules accompanying the petition listed the property encumbered by mortgage 4 as having a declared value of $85,000. M & T is listed as having a secured claim in the amount of $169,916.41 for "balances owed on loan for house". Debtors took exemptions in the property totaling $34,500 pursuant to § 522(d)(1) of the Bankruptcy Code.

Since the filing of their second bankruptcy case, debtors have neither offered M & T adequate protection of its interest in their property nor reaffirmed the obligation evidenced by note 4.

On December 30, 2002, the chapter 7 trustee commenced the above-captioned adversary action against M & T seeking pursuant to § 547(b) to avoid mortgage 4 as a preference and to recover it from M & T for the benefit of the bankruptcy estate pursuant to §§ 550(a)(1) and 551. In essence, he alleges in the complaint that the reinstatement of mortgage 4 on August 7, 2002, constituted a transfer of debtors' interest in the farm on account of an antecedent debt as evidenced by note 4. The transfer, which occurred within ninety days of the commencement of the second bankruptcy case, was made while debtors were insolvent. It enabled M & T to receive more than it would had the transfer had not occurred and M & T instead received payment as a general unsecured creditor.

Among other things, M & T asserted in its response that the reinstatement of mortgage 4 by the state court did not constitute a transfer of an interest of debtors in the property but instead was merely an administrative correction of an erroneous record. Even if the reinstatement of mortgage 4 is avoidable as a preference, M & T further asserted, the property also is encumbered by mortgages 1, 2 and 3, none of which can be avoided by the chapter 7 trustee.

For its part, M & T requested relief from the automatic stay pursuant to

§ 362(d) of the Bankruptcy Code on February 13, 2003, so that it may pursue its lawful remedies in state court and foreclose on debtors' farm.

The chapter 7 trustee concedes in his opposition to M & T's motion that the property is not necessary to an effective reorganization. He denies, however, that there is no equity in the property because mortgage 4 is avoidable as a preference for reasons stated in the complaint in the above adversary action.

At the urging of the parties, the chapter 7 trustee's preference action and M & T's motion for relief from stay were submitted for decision on a case-stated basis. They prepared a joint stipulation of facts and exhibits[1] and assured the court that it could decide both matters on that basis alone and did not need to conduct an evidentiary hearing.

### — DISCUSSION —

#### I.) The Trustee's Preference Action.

The chapter 7 trustee seeks in accordance with § 547(b) of the Bankruptcy Code to avoid what he characterizes a "reinstatement" of mortgage 4 pursuant to the state court order of August 7, 2002.

Section 547(b) provides in pertinent part as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of an interest of the debtor in property—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the filing of the petition; . . . .

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) Such Creditor Received Payment Of Such Debt To The Extent Provided By The Provisions Of This Title.

11 U.S.C. § 547(b).

■ The purpose of this provision is to ensure that creditors are treated equitably, both by deterring a failing debtor from giving preferential treatment to its most persistent and demanding creditors "in an effort to stave off a hard ride into bankruptcy", and by discouraging creditors from racing to dismantle the debtor. *Fiber Lite v. Molded Acoustical Products, Inc. (In re Molded Acoustical Products, Inc.),* 18 F.3d 217, 219 (3d Cir.1994).

■ The burden of proving each of these requirements lies with the chapter 7 trustee in this case. 11 U.S.C. § 547(g). This the trustee must do by a preponderance of the evidence. *Bohm v. Golden Knitting Mills, Inc. (In re Forman Enterprises, Inc.),* 293 B.R. 848, 855 (Bankr. W.D.Pa.2003).

A debtor is presumed to be insolvent for purposes of § 547(b)(3) during the ninety-day period immediately preceding the fil-

---

**1.** The chapter 7 trustee also submitted a supplementary statement of facts and exhibits to which M & T did not stipulate. M & T has objected to this supplementary statement of facts and exhibits and asserts that they may not be considered by the court. We need not decide whether to sustain M & T's objection. The resolution of the matters before us is the same whether the chapter 7 trustee's supplementary submission is considered or stricken.

ing of a bankruptcy petition. 11 U.S.C. § 547(f).

■ M & T has not asserted any of the affirmative defenses found at § 547(c). Each of the requirements found at § 547(b) presupposes that a transfer of a debtor's interest in property had occurred. M & T instead asserts that no transfer occurred as a result of the court order of August 7, 2002, revoking and striking the recording of the satisfaction and release of mortgage 4 "as though the same had not been entered".

It is not disputed that the satisfaction and release of mortgage 4 entered on the record on July 25, 2002, was the result of a mistake on the part of Mid–State.

■ It is the law in Pennsylvania that a satisfaction and release of a mortgage entered by mistake may be set aside and the mortgage reinstated, provided that the rights of innocent third parties are not affected. *See* 25 Pennsylvania Legal Encyclopedia, Mortgages, § 194.

The term "transfer" means for purposes of the Bankruptcy Code:

> ... every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property
> ....

11 U.S.C. § 101(54).

The chapter 7 trustee's assertion that the order of August 7, 2002, revoking and striking the satisfaction and release of mortgage 4 erroneously recorded on July 25, 2002, resulted in a transfer of debtors' interest in their farm is without merit.

The order of August 7, 2002, it was previously noted, decreed that the satisfaction and release of mortgage 4 that was recorded on July 25, 2002, was revoked and stricken "as though the same had not been entered".

We do not understand this phrase to mean that the satisfaction and release of mortgage 4 was deemed to have been recorded on July 25, 2002, and then was revoked and stricken on August 7, 2002, *with the satisfaction and release having force and effect in the interim.* We instead understand it to mean that the recording of the satisfaction and release was null and void *ab initio*—i.e., had never occurred.

It follows from this gloss of the decretal portion of the order of August 7, 2002, that no transfer of an interest of debtors in the farm occurred when the recording of the satisfaction and release of mortgage 4 was revoked and stricken. Debtors, in other words, did not obtain an interest in the farm as a result of the recording of the satisfaction and release of mortgage 4, which interest they parted with when it subsequently was revoked and stricken thirteen days later.

The assertion of the chapter 7 trustee that a transfer of debtor's interest in the farm occurred as a result of the order of August 7, 2002, well might be correct had the order not in essence declared that the recording of the satisfaction and release of mortgage 4 was void *ab initio*. The chapter 7 trustee has not, however, addressed the effect of the language appearing in the final phrase of the order on the revocation and striking of the erroneous satisfaction and release recorded on July 25, 2002.

■ The chapter 7 trustee appears instead to suggest *sotto voce* that the order of August 7, 2002, was entered without debtors receiving notice and having a meaningful opportunity to be heard concerning the matter. He also appears to suggest in the same manner that the order was entered without consideration given to whether revoking and striking the satisfaction and release recorded on July 25, 2002,

would adversely affect the rights of any other creditor.

If the chapter 7 trustee means to imply that in deciding this preference action we should consider whether the order of August 7, 2002, was properly entered, we decline to do so. It is not the place of this court to function as an appellate court and to consider whether the state court committed reversible error when it entered the order of August 7, 2002. Debtors as well as the chapter 7 trustee had ample opportunity to request the state court to reconsider its order or to appeal it to the Superior Court of Pennsylvania before the time for taking an appeal had expired. They did neither. We reject such collateral attacks on the order of August 7, 2002, and shall take it as a given and will apply it as such in deciding this preference action.

We conclude in light of the foregoing that the chapter 7 trustee's preference action fails because a transfer of debtors' interest in the farm did not occur as a result of the state court order of August 7, 2002.

## II.) Mortgages 1, 2 and 3.

The outcome of these proceedings is the same whether or not the order of August 7, 2002, gave rise to a "transfer" as the term is defined at § 101(54) of the Bankruptcy Code. Even if mortgage 4 is avoidable as a preference, mortgages 1, 2 and 3 remain of record, are enforceable, and provide M & T with an alternative means of foreclosing on debtors' farm. Neither debtors in their first bankruptcy case nor the chapter 7 trustee in this bankruptcy case took action to avoid mortgage liens 1, 2 and 3.

The debts evidenced by notes 1, 2 and 3 were discharged and debtors were no longer personally liable for them once their chapter 11 plan was confirmed in the first bankruptcy case. In their place Mid–State

received a "new" claim. *See In re Benjamin Coal Company,* 978 F.2d 823, 827 (3d Cir.1992). Payment of this "new" obligation with respect to the secured portion of its claim was subsequently evidenced by note 4 and was secured by mortgage 4.

Working from this starting point, the chapter 7 trustee considers in his brief whether mortgages 1, 2 and/or 3 "collateralize" the "new" obligation owed to M & T as a Class 1 secured creditor. Mortgages 1, 2 and 3, it was previously noted, contained language stating that the indebtedness secured by each of these mortgages included all obligations, debts and liabilities owed by debtors to Mid–State, "whether now existing or thereafter arising, whether related or unrelated" to the purposes of the debts evidenced by notes 1, 2, and 3.

Such provisions commonly are referred to as "dragnet clauses" *In re Old Electralloy Corp.,* 132 B.R. 705, 707 (Bankr. W.D.Pa.1991). Sometimes they are referred to as "future advance clauses". *See Potomac Coal Co. v. $81,961.13, In Hands of an Escrow Agent,* 451 Pa.Super. 289, 679 A.2d 800 (1996). Such clauses purport to allow a creditor to secure future advances with previously-pledged collateral. *In re Gibson,* 249 B.R. 645, 655 (Bankr. E.D.Pa.2000).

Dragnet clauses are widely disfavored, especially in matters pertaining to real estate, because they "cloud title". *Potomac Coal Co.,* 451 Pa.Super. at 296, 679 A.2d at 803. Although disfavored, dragnet clauses are enforceable if subsequent advances are related to the purposes of the original agreement. *In re Fassinger,* 246 B.R. 513, 520–22 (Bankr.W.D.Pa.2000). The purpose of the relatedness requirement is to limit application of dragnet clauses to advances which are of the same class as the primary transaction. *Kitmitto*

*v. First Pennsylvania Bank,* 518 F.Supp. 297, 300–01 (E.D.Pa.1981).

■ Pennsylvania courts have articulated the following four-part test to determine whether a future advance is subject to a dragnet clause: (1) whether the other indebtedness allegedly covered by a mortgage containing the dragnet clause is specifically expressed therein; (2) whether the other indebtedness allegedly covered by the dragnet clause is "of the same class" as the debt referred to in the prior mortgage; (3) whether the other indebtedness was intended to be separately secured; and (4) whether the creditor relied on the clause in making a future advance. *See In re Fassinger,* 246 B.R. at 522; *also In re Shapiro,* 109 B.R. 127, 134 (Bankr.E.D.Pa. 1990).

Applying this four-part test to mortgages 1, 2 and 3, the chapter 7 trustee argues that, at the very least, the second, third and fourth requirements are not satisfied in this case. From this he would have us conclude that these mortgages do not "collateralize" note 4.

■ In our estimation, the chapter 7 trustee asked the wrong question when he asked whether mortgages "collateralize" note 4. Even if they do not "collateralize" note 4, the question remains whether mortgages 1, 2 and 3 are enforceable in their own right in an *in rem* proceeding mortgage foreclosure action, notwithstanding debtors' discharge with respect to their *personal* liability under notes 1, 2 and 3. If they are so enforceable, it makes no difference whether they "collateralize" debtors' personal liability with respect to note 4, from which they presumably will be discharged in the second bankruptcy case.

The default judgment entered in favor of debtors in their § 506 action to determine Mid–State's secured status did not "strip down" mortgages 1, 2 and 3, whose under-lying claim was fully allowed pursuant to § 502 of the Bankruptcy Code. *See Dewsnup v. Timm,* 502 U.S. 410, 417, 112 S.Ct. 773, 778, 116 L.Ed.2d 903 (1992).

Moreover, Mid–State's right to foreclose on the basis of mortgages 1, 2, and 3 survived and passed unaffected through debtors' first bankruptcy case. *Owen v. Owen,* 500 U.S. 305, 308–09, 111 S.Ct. 1833, 1835–36, 114 L.Ed.2d 350 (1991). They did not somehow "disappear" or lose their efficacy as a result of the outcome of the first bankruptcy case. Mortgages 1, 2 and 3, in other words, remain vehicles for bringing an *in rem* action involving debtors' farm. *Johnson v. Home State Bank,* 501 U.S. 78, 84, 111 S.Ct. 2150, 2154, 115 L.Ed.2d 66 (1991).

■ Section 524(a)(2) of the Bankruptcy Code does not prohibit the holder of an unavoided lien from enforcing it in a subsequent *in rem* action. It only prohibits the lienholder from commencing or continuing an action to enforce a discharged debtor's *personal* liability that arose in connection with the lien. *Reed v. S & T Bank (In re Reed),* 274 B.R. 155, 158 (Bankr.W.D.Pa.2002). Under Pennsylvania law, an action in mortgage foreclosure may not include an *in personam* action to enforce a debtor's personal liability. *Id.*

We conclude in light of the foregoing that mortgages 1, 2 and 3 remain enforceable whether or not they "collateralize" note 4 and that they provide an independent basis for M & T to bring an *in rem* foreclosure action against debtors' farm.

### III.) Relief From Stay.

Section 362 of the Bankruptcy Code provides in pertinent part as follows:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such

as by terminating, annulling, or conditioning such stay—. . . .

> (2) with respect to a stay of an action against property under subsection (a) of this section, if—
>
> (A) the debtor does not have an equity in such property;  and
>
> (B) such property is not necessary to an effective reorganization.

11 U.S.C. § 362.

M & T has requested relief from stay pursuant to § 362(d)(2) so that it may take action in state court to foreclose on debtors' farm.

■ M & T has the burden of proving that there is no equity in the farm. The chapter 7 trustee has the burden of proving that the property in question is not necessary to an effective reorganization. *See* 11 U.S.C. § 362(g).

The chapter 7 trustee concedes that, for purposes of § 362(d)(2)(B), debtors' farm is not necessary to an effective reorganization. Debtors have filed a chapter 7 petition and do not seek to reorganize.

■ The chapter 7 trustee denies, however, that there is no equity in the property for purposes of § 362(d)(2)(A). Mortgage 4, he asserts, is avoidable in its entirety as a preference pursuant to § 547(b), thereby rendering debtors' farm free and clear of any and all mortgage liens. Apart from this, the chapter 7 trustee appears to assert no basis for denying that there is no equity in the property.

The chapter 7 trustee's sole asserted basis for denying that there is no equity in the property is without merit. We have determined that mortgage 4 may not be avoided as a preference and remains enforceable. In addition, we have determined that mortgages 1, 2 and 3 remain enforceable and provide a separate basis apart from mortgage 1 for foreclosing on debtors' farm in an *in rem* proceeding. The outstanding balance owed on mortgage 4 or, for that matter, on mortgages 1, 2, and 3, far exceeds the value of the farm, which is listed in debtors' schedules as having a value of $85,000. M & T, by contrast, is listed as having a secured claim approximating $170,000. Aside from asserting that M & T's mortgage lien 4 is avoidable, the chapter 7 trustee has not disputed the accuracy of these scheduled dollar amounts.

We conclude in light of the foregoing that M & T is entitled to relief from the automatic stay so that it may pursue its foreclosure action against debtors' farm in state court.

An appropriate order shall issue.

### *ORDER OF COURT*

**AND NOW,** at Pittsburgh this **24th** day of **July,** 2003, for reasons stated in the foregoing memorandum opinion, it hereby is **ORDERED, ADJUDGED,** and **DECREED** that:

(1) **JUDGMENT** is entered at Adversary Action No. 02–2779–BM **IN FAVOR OF** defendant Manufacturers & Traders Trust Company and **AGAINST** plaintiff James R. Walsh, chapter 7 trustee;  and

(2) the motion for relief from stay filed by Manufacturers & Traders Trust Company at Doc. # 34 is **GRANTED.**

It is **SO ORDERED.**