(3) made while the debtor was insolvent;
(4) made--
(A) on or within 90 days before the date of the filing of the petition; or
(B) between ninety days and one year before the date of the filing of the petition, if such creditor at the time of such transfer was an insider; and
(5) that enables such creditor to receive more than such creditor would receive if--
(A) the case were a case under chapter 7 of this title;
(B) the transfer had not been made; and
(C) such creditor received payment of such debt to the extent provided by the provisions of this title.
11 U.S.C. § 547(b).
[11] There is no dispute that the Superior Court Judgment was entered within ninety (90) days of the Petition Date, or that the Debtor was insolvent at that time. As to whether the attachment and/or perfection of the Liens will allow any of the Creditors to receive more that it would have had the purported transfer not been made, the IRS denies that is the case as to it because the Tax Lien was filed against both the Debtor and Sandra Johnson. See Memorandum in Support of the United States' Motion for Partial Summary Judgment (Docket No. 88). More generally, it can only be the case as to one of the Creditors, since each of them holds a claim sufficient to absorb all of the Net Sale Proceeds if it is found to hold the first priority interest in them. The primary dispute, then, is whether the entry of the Superior Court Judgment constituted a "transfer" at the time that it was entered.
[12] The Trustee states that the nature of property interests is generally determined by state law, but only when there is no controlling federal law. Barnhill,supra , 503 U.S. at 398, 112 S.Ct. 1386. See also Tower Credit, Inc. v. Schott (Matter of Jackson) , 850 F.3d 816 (5th Cir. 2017). As the Trustee acknowledges, Jackson , supra , disagrees with the holding of the Eleventh Circuit in Askin Marine Co. v. Conner (In re Conner) , 733 F.2d 1560 (11th Cir. 1984) regarding the time a transfer occurred under Section 547(e)(1)(B), but the court in Jackson notes that Conner predates Barnhill and did not consider Section 547(e)(3). Accord In re Freedom Grp., Inc. , 50 F.3d 408, 412 (7th Cir. 1995).
[13] The Trustee relies on United States v. Security Trust & Sav. Bank , 340 U.S. 47, 50, 71 S.Ct. 111, 95 L.Ed. 53 (1950), in which the U.S. Supreme Court stated that, in examining California statutory law, a creditor may attach property of a defendant as security for the satisfaction of a potential judgment, but such lien is considered contingent or inchoate, similar to a lis pendens notice indicating the creditor holds a right to perfect its lien against the property. Such lien does not grant the creditor the right to proceed against the subject property unless and until the lien is perfected by the entry and recording of a judgment. In response to the Trustee's assertion that the Liens were inchoate when the IRS filed its Tax Lien, Synovus contends that in recording its judgment lien, it identified the Debtor (and itself as lienor), the property subject to the Lien, and the amount of the Lien such that nothing further was required for its perfection. See generally United States v. City of New Britain , 347 U.S. 81, 84, 74 S.Ct. 367, 369, 98 L.Ed. 520 (1954). Upon review of the Synovus Lien as attached to its Proof of Claim filed on April 28, 2016 (No. 3), as well as the Stephens Lien (see Claim No. 4, filed on May 16, 2016), and the applicable federal law, these Liens were choate and have priority over the Tax Lien. Because the Debtor retained his interest in the Property under state law (as set forth below), the Debtor owned rights to the property when the Synovus Lien and the Stephens Lien were recorded.
[14] The IRS did not assert a counterclaim with its answer to the Complaint. In its motion, the IRS seeks that summary judgment be granted to it as to Counts I and II of the Complaint because the Tax Lien is not subject to avoidance as a preferential transfer. It does not seek summary judgment on the issue of its priority vis a vis the other Liens or Creditors. The IRS filed a Statement of Material Facts as to Which There Is No Genuine Issue To Be Tried (Docket No. 88). In their responses, (see Docket Nos. 95, 100, and 101), the other parties hereto generally agree there is no dispute of material fact. Synovus does object to any characterization of the Superior Court Judgment's legal effect as recognizing that a transfer, in fact, occurred. The IRS has not responded to the other summary judgment motions. Under Local Rule BLR 7007-1(c), a failure to respond indicates that the motion is unopposed. It is not disputed that the IRS filed its Notice of Federal Tax Lien on October 2, 2012, which post-dates both the Transfer and the filing of the Liens. Further, the IRS filed a Proof of Claim asserting only an unsecured claim in the amount of $4,544,390.40. See Claim No. 1, filed April 4, 2016. That Proof of Claim was never amended to assert a secured claim in this case. Claims Docket, passim .
[15] See In re Burkett , 295 B.R. 776, 779, 783 (Bankr. W.D. Pa. 2003) (concluding that ab initio means "never occurred" in construing an order revoking satisfaction of mortgage). Because property rights in bankruptcy cases are generally determined by state law, Synovus contends that this Court is bound by the holding in the Superior Court Judgment that the Transfer was void from its inception, and not merely voidable. Further, although federal law governs the priority of federal tax liens (In re McTyre Grading & Pipe, Inc. , 193 B.R. 983, 986 (Bankr. N.D. Ga. 1996) ), such liens are subordinate to prior-filed liens of judgment creditors. See In re Craft-Latimer , No. 15-51383-BEM, 2015 WL 5042108, at *2 (Bankr. N.D. Ga. Aug. 10, 2015) ; see also 26 U.S.C. §§ 6321 & 6323. As noted above (note 13, supra ), the Court accepts Synovus' argument disputing the Trustee's assertion that the Synovus Lien was inchoate when the IRS filed its Tax Lien.
[16] According to Stephens, because the Debtor conveyed away his interest in the Property before any liens attached, no other creditor holds a valid lien against such an interest of the Debtor, and Stephens' claim takes priority.
[17] This statute provides that -
(a) An insolvent person may not make a valid gift to the injury of his existing creditors.
O.C.G.A. § 44-5-88(a). Synovus contests the attempt by the Trustee or Stephens to collapse this independent provision for relief into the remedial scheme set forth under the U.F.T.A. Because an illegal gift is void, a creditor with a judgment does not need to use the remedies of the U.F.T.A. including any requirement that it first obtain an attachment. See O.C.G.A. § 18-2-77(a)(2) ; but see O.C.G.A. § 18-2-77(b). Further, Synovus notes that additional relief as referenced in Section 18-2-77(a)(3)(C) permits use of Section 44-5-88(a).
[18] Synovus also argues, among other things, that (1) the Superior Court Judgment is final and binding, (2) Stephens is estopped from denying that the Transfer was voided as to all creditors since the parties herein all relied on that finding in supporting the Trustee's sale of the Property, (3) Stephens' asserted status as a "diligent creditor" does not allow him to displace a senior lienholder (citing, among others, Lamchick, Glucksman & Johnston, P.A. v. City Nat'l Bank of Fla. , 659 So.2d 1118 (Fla.Dist.Ct.App. 1995) ), (4) Stephens' argument that any levy on the Property by other creditors would be subject to his interests based on the Superior Court Judgment is without support (see O.C.G.A. §§ 9-12-80 et seq. , and § 9-13-60(c) (proceeds of sale applied first to liens superior to claims of plaintiff in execution) ) and is moot as the Debtor's interest became property of the estate under 11 U.S.C. § 541(a)(1), and (5) Stephens is not entitled to compensation for his attorney's fees based on the "common fund" doctrine. Synovus also disputes the Trustee's claim to a surcharge under 11 U.S.C. § 506(c) and, based on the seniority of the Synovus Lien over the Tax Lien, maintains any claim for subordination under 11 U.S.C. § 724(b) is moot. Finally, because there was no transfer, Synovus argues the Trustee's argument that, hypothetically, the Trustee could have sued under the U.F.T.A. and used the statute of limitations of the Fair Debt Collection Practices Act is not relevant.
[19] Stephens urges that the Superior Court Judgment did not act to re-convey a property interest to the Debtor based on an avoidance of the Transfer under the U.F.T.A. According to Stephens, it is his status as a creditor that is determinative in his U.F.T.A. action, not his rights as a judgment lien holder.
[20] Stephens adds that the Trustee has no stake in the ultimate distribution of the Net Sale Proceeds because there are no unsecured creditors of this estate. With respect to the IRS, Stephens avers in his uncontested Statement of Material Facts that the income taxes covered by the Tax Lien were for tax year 2010 and were not yet due and payable when the Deed was recorded. Docket No. 89, para. 7. Stephens further points out that the IRS did not file a timely response to the original complaint herein and is in default. In addition, as mentioned above, the Proof of Claim filed by the IRS (Claim No. 1) was filed as a general unsecured claim, which operates as an estoppel regarding its assertion of a secured interest in the Net Sale Proceeds. Finally, Stephens states that the IRS is not a good faith transferee for value under O.C.G.A. § 18-2-78(b) since the Tax Lien was involuntary. Thus, the argument that the Tax Lien attached to the Property when title was in the name of Sandra Johnson does not protect the Tax Lien against Stephens' right to recovery. To date, the IRS has not responded to Stephens' Motion or any of his statements of fact or legal arguments. See Local Rule BLR 7056-1(a)(2)(facts not controverted deemed admitted).
[21] The cited portion of these Comments state as follows:
"Avoidance" is a term of art in this Act, for it does not mean that the transfer or obligation is simply rendered void. It has long been established that a transfer avoided by a creditor under this Act or its predecessors is nevertheless valid as between the debtor and the transferee. For example, in the case of a transfer of property worth $100 by Debtor to Transferee, held voidable in a suit by Creditor-1 who is owed $80 by Debtor, "avoidance" of the transfer leaves the $20 surplus with Transferee. Debtor is not entitled to recover the surplus. Nor is Debtor's Creditor-2 entitled to pursue the surplus by reason of Creditor-1's action (though Creditor-2 may be entitled to bring its own avoidance action to pursue the surplus). The foregoing principle is embedded in the language of subsection (a)(1), which prescribes "avoidance" only "to the extent necessary to satisfy the creditor's claim." Section 9(a) of the Uniform Fraudulent Conveyance Act was similarly limited.
Official Comments, Uniform Voidable Transactions Act (as amended in 2014), Section 7, Remedies of Creditor, ¶ 7, p. 38 (citations omitted)(available at http://www.uniformlaws.org/shared/docs/Fraudulent% 20Transfer/2014_AUVTA_Final% 20Act_Amended_2016mar8.pdf). Stephens states that these comments are instructive because this provision as adopted in Georgia in 2015 was not materially altered from the U.F.T.A., which controls herein.
[22] This statute provides that -
(a) In an action for relief against a transfer or obligation under this article, a creditor, subject to the limitation in Code Section 18-2-78, may obtain:
(1) Avoidance of the transfer or obligation to the extent necessary to satisfy the creditor's claim ; ....
O.C.G.A. § 18-2-77(a)(1) (emphasis supplied). Stephens also points out that the applicable statute of limitations had run against Synovus and that Synovus never joined the Superior Court Action. See O.C.G.A. § 18-2-79.
[23] Once the party moving for summary judgment has identified materials demonstrating the absence of a genuine issue of material fact, the non-moving party cannot rest on mere denials or conclusory allegations, but must go beyond the pleadings and designate, through proper evidence such as by affidavits on personal knowledge or otherwise, specific facts showing the existence of a genuine issue for trial. See Fed. R. Civ. P. 56(e) ; see also Matsushita Elec. Ind. Co. v. Zenith Radio Corp. , 475 U.S. 574, 586-87, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) ; Johnson v. Fleet Finance, Inc. , 4 F.3d 946, 948-49 (11th Cir. 1993) ; Fitzpatrick v. City of Atlanta , 2 F.3d 1112 (11th Cir. 1993).
[24] See Docket Nos. 61 (para. 3), 67 (para. 3), 79, and 93.
[25] The issue for decision might alternatively be stated as follows: in the absence of the Transfer, Synovus would have obtained and retained the first priority lien on the interest in the Property originally held by the Debtor by virtue of its first-in-time judgment. Does the fact that the Debtor made a patently fraudulent transfer of his interest in the Property to his wife just before Synovus obtained and recorded its judgment somehow change that result in circumstances where the Transfer was subsequently declared to be void ab initio by a court with jurisdiction over both the transferor and the transferee, albeit at the request of a different creditor of the Debtor? This Court, for the reasons set forth herein, holds that it does not.
[26] Each of the Creditors' respective claims are larger than the amount of the Net Sale Proceeds, such that the claim that is ultimately determined to have priority will exhaust the full amount of the Net Sale Proceeds, subject to any expense recovery that is permitted to come ahead of the relevant claim.
[27] Asserting the broad definition of "property" or "rights to property" under 26 U.S.C. § 6321, the IRS argues this provision includes a taxpayer's interest in a property owned with a spouse as a tenancy by the entirety. As correctly noted by the Creditors in their briefs, however, Georgia does not recognize such an estate between spouses, who co-own property as tenants in common. See e.g. Heid v. Astrue , 2012 WL 5874318, *4 (S.D. Ga. Oct. 26), report adopted, 2012 WL 5874338 (S.D. Ga. Nov. 20, 2012), citing O.C.G.A. §§ 44-6-120, -121.
[28] The Court has previously found that the Liens were choate and enforceable (see note 13, supra ). Further, the IRS has not contested Stephen's statement that the income taxes covered by the Tax Lien were for tax year 2010 and were not yet due and payable when the Deed was recorded. Docket No. 89, para. 7. The IRS did not file a timely response to the original complaint herein. In addition, the proof of claim filed by the IRS (Claim No. 1) was filed as a general unsecured claim and operates as an estoppel to any assertion of a secured interest in the Net Sale Proceeds. Finally, it appears that the IRS is not a good faith transferee for value under O.C.G.A. § 18-2-78(b) since the Tax Lien is an involuntary lien. In view of all of the foregoing and the above, although the motion of the IRS is meritorious to the extent that the Tax Lien is not avoidable as a preference, it does not result in the IRS taking priority over Synovus or Stephens.
[29] As noted above, the Trustee alternatively argues that any interest re-conveyed to the Debtor was subject to the Tax Lien that attached to the entire interest in the Property when it was titled in the name of Sandra Johnson. Given the ruling here that the one-half (½) interest at issue here was not re-conveyed to the Debtor by the Superior Court Judgment, and thus the Tax Lien had already attached to that interest, this argument does not support a re-positioning of the IRS Lien ahead of the other, earlier filed Liens.
[30] Even if no transfer occurred until the Debtor acquired an interest in the Property, the Trustee has offered no controlling, countervailing federal law on the effect of a state court ruling under state law that a transfer is null and void, or otherwise suggesting that this Court should not give the words used by the Superior Court their ordinary meaning. The Trustee's related assertions that he could have sought to avoid the Transfer himself do not seem relevant to his preference claim, particularly since he has thus far chosen not to do so.
[31] Stephens appears to agree with the Trustee's analysis to the extent that under the U.F.T.A., the Transfer was not invalidated in toto , as if it never happened. Acknowledging there is no direct Georgia case authority on point, Stephens adds, however, that the Transfer was voidable only insofar as a remedy was created in favor of Stephens' based on the meritorious assertion of his right to recovery in bringing the avoidance suit. Comment 7, as cited by both the Trustee and Stephens in their briefs, states that "[i]t has long been established that a transfer avoided by a creditor under this Act or its predecessors is nevertheless valid as between the debtor and the transferee " (emphasis supplied)(see note 21, supra ). This statement follows its description of "avoidance" as not being the same as "simply rendered void" and tends to support Stephens' reading of O.C.G.A. § 18-2-77(a)(1) that the beneficiaries of an avoidance are limited. (See note 22, supra ). However, this argument about what might happen under the U.F.T.A. (ignoring O.C.G.A. § 44-5-88 ) is no longer relevant in light of what actually did happen in the Superior Court Judgment (i.e. the Transfer was voided ab initio ). Further, even if such a result were not permitted under the U.F.T.A., the Superior Court Judgment also relied on O.C.G.A. § 44-5-88.
[32] Without citing any supporting authority, the Trustee, relying on Comment 7 (see note 21, supra ) and the assertion that 11 U.S.C. § 547(e)(3) is controlling federal law (see Barnhill,supra ), seems to deny that the Superior Court could provide retroactive nullification as a remedy. However, that is precisely what it did, and in the posture of this case, it is not an effect that can be undone here.
[33] The Trustee cites In re Westpark One, LLC , 2015 WL 5199368 (Bankr. D.Ariz. Sept. 4, 2015) for the proposition that a judgment creditor that records its judgment after a transfer of property by a judgment debtor acquires no lien even if the transfer is subsequently set aside as fraudulent. However, that decision holds that under Arizona's version of the U.F.T.A. and Arizona law, fraudulent transfers are voidable, not void ab initio , as the Transfer was found to be here. Cf. O.C.G.A. § 18-2-77.
[34] In Georgia, "[f]raudulent conveyances are voidable in respect of creditors [and] [t]itle remains in the debtor subject to subsequent judgments in favor of his creditors." United States v. Reid , 127 F.Supp.2d 1361, 1380 (S.D.Ga. 2000), citing Coleman v. Law , 170 Ga. 906, 910, 154 S.E. 445 (1930). Georgia law also provides that when a judgment lien becomes effective, it binds all of the judgment debtor's property then owned or after-acquired. See O.C.G.A. § 9-12-80 ; see also In re Lively , 74 B.R. 238 (S.D. Ga. 1987), aff'd sub nom. without opinion, Walker v. Claussen Concrete Co. , 851 F.2d 363 (11th Cir. 1988) (holding that a judicial lien attached to property acquired by a bankruptcy trustee who prosecuted a fraudulent conveyance action); Cohutta Mills, Inc. v. Hawthorne Indus., 179 Ga.App. 815, 348 S.E.2d 91 (1986) (lien enforceable against property recovered by trustee). In Coleman,supra , 154 S.E. at 448, the Georgia Supreme Court began its analysis with this principle of law (i.e. the binding effect of judgments) stating that as to void conveyances, the property is subject to subsequent judgments. One oft-cited treatise notes Coleman as contrary authority to the rule that a judgment is not a lien on land fraudulently conveyed prior to the judgment. See 1 G. Glenn, Fraudulent Conveyances and Preferences, § 121, at 234-35 (Rev. ed. 1940). Cases cited by Glenn (p. 234, n. 51) in favor of this rule are the same cases cited in Westpark,supra , 2015 WL 5199368 at *4 (see note 33, supra ). Similarly, the court in In re Silver , 302 B.R. 720, 724 (Bankr. D. N.Mex. 2003), aff'd in part, rev'd in part , 303 B.R. 849 (10th Cir. BAP 2004), sought to distinguish Lively,supra , on grounds that, unlike Georgia law, New Mexico law only makes such transfers voidable.
[35] The Georgia Supreme Court's statement in Coleman , supra , about the binding effect of judgments on property conveyed prior to rendition of a judgment was made in connection with a conveyance made with an actual intention to delay, hinder, or defraud creditors - transfers that are "void." The court in Reid , supra , thereafter applied that statement of Georgia law to transfers both actually and constructively fraudulent, and held such fraudulently transferred property "[s]ubject to any valid liens or other encumbrances" of the transferor. 127 F.Supp.2d at 1380. Compare O.C.G.A. § 18-2-22(2) & (3) (repealed)(cited in Reid , supra ) ; Civil Code 1910, § 3224(2)(cited in Coleman , supra ) ; and O.C.G.A. § 18-2-74(a)(1), § 18-2-75(a).
[36] See also Reilly v. Sabin , 81 F.2d 259 (D.C.Cir. 1935) (finding that trustee under former Bankruptcy Act not entitled to enjoin holders of judgment liens from proceeding with action to set aside allegedly fraudulent transfer brought within four (4) months of bankruptcy since judgments at issue, even though entered subsequent to transfer, were obtained outside such period). Compare In re Amtron , 192 B.R. 130, 132 (Bankr. D.S.C. 1995) (federal tax lien attached to fraudulently conveyed patents). The court in Amtron cited Lively,supra , as analogous support of its analysis under South Carolina law that such conveyances are set aside as void.
[37] Although Stephens maintains this provision does not override the more specific remedial provisions of the U.F.T.A., he cites no case authority to support the notion that its inclusion by the Superior Court in its Judgment is not significant or cannot be relied upon.
[38] The Superior Court Judgment appeared to contemplate further proceedings that might provide a basis for awarding additional relief, which supports the interpretation of the Superior Court Judgment adopted here that such relief was not intended to be restricted to Stephens. In fact, Stephens was seeking such additional relief when the Debtor filed this bankruptcy case and all such efforts were stayed. See Plaintiff's Omnibus Motion in Respect of Levy and Partition Proceedings and Memorandum in Support Thereof, at Exhibit "L" (citing, among others, O.C.G.A. § 18-2-77(b) ). More specifically, Stephens had filed a motion seeking levy and sale against the Debtor's interest in the Property as transferred or, alternatively, an equitable partition of the Property by sale. That motion was pending on the Petition Date and likely precipitated the filing of this bankruptcy case. The relief sought therein has effectively been subsequently obtained in this Court, rendering those requests moot.
[39] Stephens states that his agreement to the sale, which in his view only conveyed the Debtor's possessory right as a tenant at sufferance and the fee simple interest owned by Sandra Johnson, did not mean he acquiesced in the wording of the Superior Court Judgment. Thus, in Stephen's view, the Net Sale Proceeds remain subject to Stephens' rights as the avoiding creditor under the Superior Court Judgment, which, in his view, had not been finally determined. As discussed herein, however, the broader scope of the Superior Court Judgment has been adequately established.
[40] Whether or not the Superior Court Judgment would have been deemed to have achieved sufficient finality for purposes of appeal under state law, and whether or not it is subject to collateral review, given the parties' reliance on its ruling in this bankruptcy case with respect to the sale of the Property and as a basis for their arguments in the Adversary Proceeding, the Court believes it is proper to give the Judgment its intended effect. Further, as a matter of comity, this Court believes it would be inappropriate to allow a collateral challenge here to the order of a state court with competent jurisdiction entered on matters presented to and necessarily adjudicated by that court.
[41] Although judicial assessment that a transfer is void is generally necessary, a secured creditor does not receive new rights as a result of such ruling-its existing interest is simply recognized.
[42] The Trustee's argument under Gordon v. Harrison (In re Alpha Protective Serv., Inc.) , 531 B.R. 889 (Bankr. M.D. Ga. 2015), that he could have avoided the Transfer using 11 U.S.C. § 544(b), is not relevant as the Transfer has already been avoided. Instead, the Court must address the effect of that avoidance. Moreover, there is contrary authority in this district. See MC Asset Recovery, LLC v. Southern Company , 2008 WL 8832805, 2017 Bankr. LEXIS 123608 (N.D. Ga. July 7, 2008) (relying upon provision in the adopting act of no intent to modify the provisions of Title 11); see also MC Asset Recovery LLC v. Commerzbank A.G. (In re Mirant Corp.) , 675 F.3d 530 (5th Cir. 2012).
[43] See Counterclaim and Cross-Claims (para. 5)(Docket No. 10), and Counterclaims (para. 8) and Cross-Claims (para. 2)(Docket No. 67).
[44] The Trustee contends that, because the IRS is a creditor in this case, he can avoid a transfer within ten (10) years prior to the Petition Date. See In re Kipnis , 555 B.R. 877 (Bankr. S.D. Fla. 2016). Likewise, the Trustee insists that he would have been able to avoid the Transfer by stepping into the shoes of the IRS and using the six-year reachback period under the Fair Debt Collection Procedures Act in accordance with 11 U.S.C. § 544(b). See Alpha Protective Serv.,supra , 531 B.R. 889. This may be so, but Stephens having already done so, such efforts do not seem necessary in this case. Further, had it been the Trustee that had undone the Transfer, it is clear, in light of his other requests in this case, that he would be seeking his costs for having done so out of the Net Sale Proceeds.
[45] The case of Key West Rest. & Lounge, Inc. v. Connecticut Indem. Co. (In re Key West Rest. & Lounge, Inc.) , 54 B.R. 978, 985 (Bankr. N.D. Ill. 1985), cited by Synovus, is distinguishable because here the benefit provided to Synovus is not incidental and Synovus was similarly situated with the other Creditors as to the Transfer.
[46] There is no basis to grant Stephens' fees based on a "percentage of the fund" analysis ahead of Synovus.
[47] The costs were incurred with regard to the sale of the entire Property, while the Net Sale Proceeds represent only one-half of the net proceeds of sale.
[48] The Trustee states that, contrary to Synovus' insistence, he is not in the Complaint seeking a fifty percent (50%) surcharge, but instead, is seeking to surcharge the Debtor's interest in the Property for reasonable fees and expenses consistent with 11 U.S.C. § 506(c).
--------